254 P.3d 439

**Geraldine CVITANOVICH–DUBIE, now known as Geraldine Cvitanovich, Petitioner/Plaintiff–Appellant**

**v.**

**Nancy DUBIE, Personal Representative of the Estate of George Patrick Dubie, Respondent/Defendant–Appellee.**

**No. 28928.**

Supreme Court of Hawai'i.

June 22, 2011.

---

Michael Jay Green, Howard Glickstein, (Michael Jay Green & Associates) and Kimberly A. Van Horn, for petitioner/plaintiff-appellant.

Paul Tomar (Ashford & Wriston), Raymond Okada, Bruce Lamon and Kimberly Koide (Goodsill Anderson Quinn & Stifel), for respondent/defendant-appellee.

RECKTENWALD, C.J., NAKAYAMA and DUFFY, JJ., and Circuit Judge PERKINS, assigned in place of MOON, C.J., recused and retired; with ACOBA, J., concurring separately and dissenting.

Opinion of the Court by
RECKTENWALD, C.J.

In the instant appeal, we consider whether the family court properly denied Geraldine Cvitanovich–Dubie's (Geraldine) motion for relief from the divorce decree terminating her marriage to George Patrick Dubie

1. The Honorable R. Mark Browning presided.

(George). The motion alleged that Geraldine and George were never legally married, and that the property settlement agreements attendant to the divorce decree were procured through fraud on the court and undue influence.

Briefly stated, the family court granted Geraldine and George's divorce in a November 28, 2003 Divorce Decree (11/28/03 Decree). George was subsequently shot and killed in Thailand on July 2, 2006. On June 28, 2007, Geraldine filed a motion to vacate the 11/28/03 Decree, or to set aside the corresponding property division, pursuant to Hawai'i Family Court Rules (HFCR) Rule 60(b)(4) and (6), quoted *infra*. Geraldine argued, inter alia, that her marriage to George was void *ab initio* because George's previous marriage had not ended in a valid divorce. Accordingly, Geraldine argued that she and George were not legally married at the time the family court entered the 11/28/03 Decree, and that the 11/28/03 Decree was therefore void for lack of subject matter jurisdiction.

The Family Court of the First Circuit (family court) denied Geraldine's motion,[1] and Geraldine appealed. In an April 12, 2010 published opinion, the Intermediate Court of Appeals (ICA) held that quasi-estoppel barred Geraldine's challenge to the validity of the 11/28/03 Decree. *Cvitanovich–Dubie v. Dubie*, 123 Hawai'i 266, 278–80, 231 P.3d 983, 995–97 (App.2010). The ICA further held that Geraldine's claims of fraud and undue influence were properly considered under HFCR Rule 60(b)(3), quoted *infra*, and were untimely because they were not brought within one year of the 11/28/03 Decree. *Id.* at 281–82, 231 P.3d at 998–99. Geraldine seeks review of the ICA's May 3, 2010 judgment, affirming the family court's order denying Geraldine's motion.

We conclude that the ICA did not err in affirming the family court's order, but that its reasoning was erroneous in part. Specifically, the ICA held that Geraldine was estopped from challenging the validity of George's prior divorce, and thereby was estopped from challenging the family court's

subject matter jurisdiction to enter the 11/28/03 Decree. *Id.* at 278–80, 231 P.3d at 995–97. However, jurisdiction cannot be created by estoppel, *cf. Williams v. Aona,* 121 Hawai'i 1, 8, 210 P.3d 501, 508 (2009) ("The lack of jurisdiction over the subject matter cannot be waived by the parties.") (citation omitted), and it therefore follows that a party cannot be estopped from challenging the family court's subject matter jurisdiction. Accordingly, the ICA was required to address whether the 11/28/03 Decree was "void," as that term is used in HFCR Rule 60(b)(4), for lack of subject matter jurisdiction.

For the reasons set forth below, we hold that the 11/28/03 Decree is not void under HFCR Rule 60(b)(4). We further hold that Geraldine's claims of "fraud on the court" and undue influence are properly considered under HFCR Rule 60(b)(3), and are therefore untimely. Accordingly, we affirm the judgment of the ICA.

## I. Background

The following factual background is taken from the record on appeal.

### A. 11/28/03 Decree

Geraldine and George's certificate of marriage indicates that they were married on May 1, 1996. Geraldine filed a Complaint for Divorce on November 6, 2003, on the ground

that the marriage between Geraldine and George was irretrievably broken.

Following a hearing, the family court filed the 11/28/03 Decree, in which it found "the material allegations of the Complaint for Divorce to be true, [Geraldine] is entitled to a divorce from the bonds of matrimony . . . and the [family c]ourt has jurisdiction to enter this Divorce Decree." The 11/28/03 Decree incorporated by reference "the Marital Agreement, signed on October 20, 2003, [the] First Amendment to Marital Agreement, signed on November 3, 2003, [the] Second Amendment to Marital Agreement, signed on November 7, 2003, and [the] Third Amendment to Marital Agreement, signed on November 7, 2003" (hereinafter collectively "Property Settlement Agreements"). The 11/28/03 Decree ordered that "[t]he parties are awarded all of their separate property," and that "[a]ll joint property shall be divided equally," except as set forth in the Property Settlement Agreements.

### B. Rule 60 motion

#### 1. Geraldine's allegations and arguments

On June 28, 2007, Geraldine filed a motion to vacate the 11/28/03 Decree, or to set aside the corresponding property division, pursuant HFCR Rule 60(b) [2] (Rule 60 motion).[3]

---

**2.** Unless otherwise indicated, all references herein to Rule 60(b) refer to the HFCR. HFCR Rule 60(b) provides for relief from a judgment or order as follows:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) *fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;* (4) *the judgment is void;* (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying*

relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.
(Emphasis added).

**3.** Geraldine had previously filed a Motion for Substitution of Parties to Pursue Post Decree Relief, seeking to substitute Nancy Dubie (Nancy), as Personal Representative of George's estate, as a defendant. It appears that the family court orally granted the substitution during an October 8, 2007 hearing on Geraldine's motions, inasmuch as the family court stated that it was

Geraldine's Rule 60 motion sought relief pursuant to Rule 60(b)(4) and Rule 60(b)(6). With regard to Rule 60(b)(4), Geraldine argued that the 11/28/03 Decree was void on the ground that Geraldine and George were never legally married. Alternatively, Geraldine argued that the property division portion of the 11/28/03 Decree should be set aside under Rule 60(b)(6), on the ground that the property division was the result of "fraud on the court" and "undue influence."

In her Memorandum in Support of Motion, Geraldine alleged the following facts in support of her claims. Geraldine asserted that George was legally married to Sylvie Bertin (Sylvie) in Honolulu, Hawai'i on October 2, 1989. Geraldine asserted that Sylvie "purported to obtain a divorce decree in Santo Domingo, Dominican Republic" on February 2, 1995 (Dominican Decree).[4] Geraldine asserted that Sylvie was then a resident of Montserrat, West Indies, and that George "was not and never had been a resident and/or domiciliary of the Dominican Republic, and did not appear personally or through counsel in any divorce proceedings in the Dominican Republic."

Geraldine further asserted that she met George in March 1996, and that George "intended to obtain her money and property." Geraldine asserted that George therefore made factual representations to her, including that (1) he was independently wealthy; (2) he had authored numerous screen plays for well-known movies; (3) he had serious and/or fatal illnesses and diseases; and (4) his uses of her money were to her benefit. Geraldine further asserted that George concealed from her "that he had a criminal conviction, that there were unsatisfied civil judgments against him for more than a million dollars for fraud and undue influence, and that he had fathered at least nine children."

Geraldine further asserted that, in 2002, George "began spending a considerable amount of time in Thailand," where he obtained "items of value and real property" using Geraldine's money. Geraldine asserted that, in 2003, George advised her that "for business and other reasons" they should divorce, but that the divorce would be temporary and they should not tell anyone of the divorce.

In support of these factual assertions, Geraldine submitted (1) a copy of George and Sylvie's marriage certificate; (2) certified copies of two separate Judgments, Guilty Convictions and Probation Sentences, sentencing "George Dubie" on charges of theft in the first degree, to which he pled no contest; (3) a copy of a civil judgment against George in the amount of $1,705,594.44 in an unrelated civil case; (4) certified copies of Geraldine and George's marriage license application and marriage certificate, indicating that Geraldine and George were married on May 1, 1996;[5] (5) a Variation of Separation Agreement entered into by Sylvie and George in 1996;[6] (6) a Report of the Death of an American Citizen Abroad concerning George's death; (7) an Order Granting Petition for Probate of Will and Appointment of Personal Representative in P. No. 06–1–0700, naming Nancy as Personal Representative of George's estate; (8)

"inclined to grant the motion for substitution[,]" and did not comment further on that motion. Although no written order was entered on Geraldine's motion for substitution, all subsequent filings listed Nancy as the defendant, and neither party has disputed that the motion for substitution was granted.

**4.** The parties variously refer to the date of the Dominican Decree as February 2, 1995 or February 7, 1995. It appears that the judgment of the Dominican court was entered on February 2, 1995, and that a Notice of Judgment was issued on February 7, 1995. For purposes of this opinion, we consider the date of the Dominican Decree to be the date of the Dominican court's judgment, or February 2, 1995.

**5.** In the Marriage License Application from the Hawai'i State Department of Health, George indicated that his most recent marriage had ended in divorce in September 1995 in the "Dominican Rep., Carribean [sic]."

**6.** The Variation of Separation Agreement, which was filed in the Supreme Court of British Columbia on October 23, 1996, amended a prior June 9, 1995 Separation Agreement and altered Sylvie and George's agreement with regard to custody of their daughter. In the Variation of Separation Agreement, Sylvie is denominated as "the Wife," and George is denominated as "the Husband."

Geraldine's declaration; (9) a declaration, "legal opinion," and supporting materials from an attorney in the Dominican Republic, concerning the validity of the Dominican Decree; and (10) a declaration of forensic psychologist Bennett Blum, opining that the Property Settlement Agreements were a result of George's undue influence on Geraldine.

In her declaration, Geraldine stated, in pertinent part, as follows:

3. In or about March 1996, I met GEORGE [ ]. From the beginning of our relationship, GEORGE [ ] made factual representations to me regarding his financial worth, his business activities, his children and his marital status. These included, without limitation, representations that he was independently wealthy, that he was the author of numerous screen plays of well-known Hollywood movies, that he had four children, and that he was divorced from his previous wife Sylvie [ ]. GEORGE [ ] concealed the facts that he had a criminal conviction, that there were civil judgments against him, and that he had fathered at least nine children.

4. On or about April 30, 1996, a purported investigator named G. Kalani Long gave me a letter in which he advised me that he had conducted a background check on GEORGE [ ] on March 27, 1996; that he had checked publicly available records in the State of Hawaii with regard to whether GEORGE [ ] had a criminal record and whether there had been civil judgments entered against him and that the results of the investigation were that GEORGE [ ] had no criminal record and that there were no civil judgments against him.

5. GEORGE [ ] and I went through a marriage ceremony on May 1, 1996. From and after that date, I thought and believed that GEORGE [ ] and I had been legally married on May 1, 1996.

6. I relied on the factual representations as set forth above. Had I known the truth, I would not have consented to marry GEORGE [ ].

7. Shortly after my marriage to GEORGE [ ], he introduced me to Sylvie [ ].

8. Beginning around 2002, GEORGE [ ] began spending a considerable amount of time in Thailand, where, on information and belief, he invested in, purchased, or otherwise obtained items of value and real property, using money obtained from me. He represented to me that each item he purchased or invested in belonged equally to both of us and that all uses of and investments of my money created an ownership interest in my favor and therefore that they were of benefit to myself and/or would be returned to me.

9. In 2003, he represented to me that for business and other reasons, we should obtain a divorce, but that the divorce would be only temporary, that we would soon remarry, and that therefore, we shouldn't tell others of the divorce and should continue to live as we had throughout our marriage. I believed him and agreed to do so. GEORGE [ ] caused me to agree to transfer real property, personal property and other things of value to him via contracts, some of which became incorporated in what purported to be a decree of divorce issued by the [family court] and some of which were post-divorce decree transfers.

10. Not until months after GEORGE [ ]'s death did I become aware that GEORGE [ ] had not been validly divorced from Sylvie [ ] at the time of the May 1, 1996 ceremony.

11. It was only after GEORGE [ ]'s death in July of 2006 that I became aware how he had manipulated me through false statements, false promises, and other devices and techniques to transfer property (real and personal) and things of value to him in the course of our divorce proceedings. But for his manipulations of me, false statements, false promises and other tactics employed by him, and my trust in him, I would not have agreed to these transfers.

. . . .

In his declaration, forensic psychologist Bennett Blum declared in pertinent part as follows:

a. It is my opinion that [Geraldine] was susceptible to manipulation and undue influence at the time she met [George] in 1996 due to certain factors in her background and certain life circumstances existing at that time.

b. It is my opinion that [Geraldine] expected honesty and truthfulness from [George]; however, he engaged in manipulative, deceptive and misleading behaviors in order to benefit himself. Such behaviors included the willful presentation of false information ("lying"); and withholding relevant information, presenting partial truths, and/or taking statements out of context ("paltering"). Through his lying and paltering, [George] used several manipulative tactics and created situations commonly employed by cult leaders, scam artists, and perpetrators of undue influence.

c. Because of [George's] lies and palters, [Geraldine] based decisions about him and his requests upon misleading, inadequate, and/or inaccurate information.

d. .... [Geraldine] was made to believe that certain actions were critical to her husband's health and their happiness as a couple. This consideration overwhelmed all others, including the input from legal advisors or accountants.

e. It is my opinion that [Geraldine] was subjected to the psychological and interpersonal conditions associated with undue influence.

f. It is my opinion, to a reasonable degree of medical probability, that all of [Geraldine's] major transactions involving [George], including property transfers, occurred as a result of his manipulation and use of undue influence tactics. This includes the period from their wedding until his death.

With regard to Rule 60(b)(4), Geraldine argued that the Dominican Decree was invalid because the Dominican court "lacked jurisdiction." Alternatively, Geraldine argued that, even if the Dominican Decree were valid under the laws of the Dominican Republic, it would not be entitled to comity.[7] Accordingly, Geraldine argued that her purported marriage to George was void *ab initio* because the Dominican Decree did not terminate George and Sylvie's marriage, making George and Geraldine's marriage bigamous. Geraldine further argued that, because the family court "did not have a 'lawfully married' couple before it," it was "without power to enter a divorce decree."

Alternatively, Geraldine argued that the family court should set aside the property division portion of the 11/28/03 Decree pursuant to Rule 60(b)(6), on the ground that George "exercised undue influence in obtaining the property division," and "because the marriage was bigamous, and because [George] committed fraud on the [c]ourt." With regard to her allegations of "fraud on the court," Geraldine argued that George "conceal[ed] the fact that he had never divorced Sylvie [ ], thereby claiming a status and identity (*i.e.*, a married man) to gain access to [the family court] so he could use it as a device to improperly obtain [Geraldine's] assets."

With regard to her allegations of undue influence, Geraldine asserted that George "was an exceptionally effective manipulator .... [and] the scale of his deception and the techniques he used were extraordinary." Geraldine asserted that the Property Settlement Agreements showed that Geraldine transferred "property, money, and other things of value to [George] for no consideration, all within an extremely short period of time." Geraldine further asserted that she "understood and believed that the divorce was only temporary[,]" and that she "did not

---

7. "Comity" means "[a] practice among political entities (as nations, states, or courts of different jurisdictions) involving esp. mutual recognition of legislative, executive, and judicial acts." *Black's Law Dictionary* 303 (9th ed. 2009).

On appeal, the ICA concluded that the Dominican Decree was not entitled to recognition on the basis of comity. *Cvitanovich–Dubie,* 123 Hawai'i at 273–75, 231 P.3d at 990–92. Because neither party has challenged that conclusion, we do not discuss Geraldine or Nancy's arguments concerning comity in further detail.

have her guard up because she believed the divorce was on paper only." Geraldine stated that her assertions would be supported "when testimony is taken and exhibits introduced," and that "all the particular ways in which the division was so inequitable ... will be shown in detail at the evidentiary hearing." However, Geraldine did not specifically request an evidentiary hearing in her Rule 60 motion or her Memorandum in Support of Motion.

## 2. Nancy's Memorandum in Opposition

In her Memorandum in Opposition to Geraldine's Rule 60 motion, Nancy, as Personal Representative of George's estate, asserted that (1) George and Sylvie were married on October 2, 1989 in Honolulu, Hawai'i; (2) a Dominican Republic court granted a divorce decree terminating George and Sylvie's marriage on February 7, 1995; (3) while residing in Hawai'i, George introduced Geraldine to Sylvie; (4) George and Geraldine's completed Marriage License Application indicated that George's former marriage ended in 1995 in the Dominican Republic; (5) Geraldine signed the Marriage License Application and swore under oath that the information contained therein was true and correct; (6) George and Geraldine participated in a ceremonial marriage on May 1, 1996; (7) at the time of the marriage ceremony, Geraldine had actual or constructive knowledge of the Dominican Decree and that it was obtained in the Dominican Republic; (8) Geraldine and George subsequently met with Sylvie and Felicia Dubie (Felicia) (daughter of George and Sylvie) in Ottawa in 1997 and in Disneyworld in 1998; (9) Geraldine became close with Felicia and established a QTIP trust naming the children of George and Sylvie as beneficiaries; (10) Geraldine filed for a divorce from George in November 2003; and (11) after entry of the 11/28/03 Decree, Geraldine continued to portray herself as married to George "in order to protect her image, as well as the image of her company[.]"[8]

With regard to Rule 60(b)(4), Nancy argued that Geraldine's assertions concerning the invalidity of her marriage to George were without merit. Specifically, Nancy argued that the Dominican Decree was valid and that, in any event, Geraldine did not have standing to collaterally attack the Dominican Decree. Nancy further argued that Geraldine was estopped from challenging the validity of her marriage to George.

With regard to Rule 60(b)(6), Nancy argued that Geraldine's allegations "amount[ed] to a claim for relief based on 'fraud[,]'" and therefore fell under Rule 60(b)(3), rather than Rule 60(b)(6). Nancy further argued that Geraldine's motion was untimely because it was not filed within one year of the 11/28/03 Decree, as required for motions brought pursuant to Rule 60(b)(3).

## 3. Subsequent proceedings

The family court held a hearing on Geraldine's Rule 60 motion on October 8, 2007.[9] No live testimony was presented. The family court directed the parties to focus their argument on Rule 60(b)(4), and the parties accordingly did not present any argument on the merits of the Rule 60(b)(6) portion of Geraldine's motion. The parties' arguments concerning Rule 60(b)(4) substantially reiterated and expanded upon the arguments presented in their briefs.

In addition, the parties presented some argument as to whether the family court was required to hold an evidentiary hearing on Geraldine's Rule 60 motion. For example, counsel for Nancy argued that, "[s]ince under *Ahlo* [*v. Ahlo*, 1 Haw.App. 324, 619 P.2d 112 (1980),] and *Hayashi* [*v. Hayashi*, 4 Haw. App. 286, 666 P.2d 171 (1983)], the [Hawai'i S]upreme [C]ourt has authorized the family court to have a threshold determination with-

8. In support of these assertions, Nancy relied on, inter alia, Sylvie's sworn declaration, which was included as an exhibit to Nancy's Memorandum in Opposition. Although Geraldine has presented various challenges to the family court's reliance on Sylvie's declaration in its findings of fact, we do not rely on the assertions set forth in Sylvie's declaration in reaching our decision.

Accordingly, we need not address whether the family court erred in relying on facts set forth in Sylvie's declaration.

9. At the same hearing, the family court also heard Geraldine's motion to substitute Nancy as the defendant in this case.

out an evidentiary hearing on whether [the] Rule [60(b)] motion should proceed and since we are the proponents of the essential dismissal of that, it would appear appropriate that we would argue first."

Counsel for Nancy later reiterated:

First of all, the Hawaii Supreme Court has already spoken about the procedure that we're here on today. *Hayashi* ..., essentially citing *Ahlo* ... says the trial court may deny relief under Rule [60(b)] without holding a hearing, and they decide the issue on the basis of papers submitted. This went back to the *Ahlo* case that essentially said the family court is not required to hold a hearing in deciding whether or not to grant relief under Rule 60.[10]

Counsel for Geraldine did not move for or otherwise request an evidentiary hearing. To the contrary, counsel for Geraldine stated during his argument:

And I think we can get rid of this whole thing when you grant summary judgment to us on [the Rule 60(b)(4)] part of it. Bifurcate the [Rule 60(b)(6)] part which is the labor intensive evidentiary part that you really would rather not have to do because it's going to take a long time and that's what we're gonna do in the circuit court is that case.[11] Bifurcate the [60(b)(4)], [60(b)(6)]. You grant summary judgment under [60(b)(4)], we're outta here.

The family court did not orally rule on Geraldine's Rule 60 motion. On December 18, 2007, the family court entered its "Order Denying Plaintiff's Motion for Post–Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60[(b)], Filed June 28, 2007."

Geraldine timely filed a notice of appeal and, on February 25, 2008, the family court entered its Findings of Fact and Conclusions of Law (FOF/COL) with respect to Geraldine's claims. The family court's FOFs/COLs provided, in pertinent part, as follows:

III. FINDINGS OF FACT[ ]

5. George [ ] married Sylvie [ ] on October 2, 1989 in Honolulu, Hawai'i.

6. On February 7, [sic] 1995, the [Dominican] court granted [the Dominican] Decree, terminating the marriage between [George] and Sylvie[.]

7. Notice of the [Dominican] Decree was mailed to [George] that same day.

8. The [Dominican] Decree became a definite and final ruling on the date of pronouncement, April 24, 1995.

9. Neither [George] nor Sylvie filed an appeal to set aside the [Dominican] Decree.

10. The time-period [sic] to appeal the [Dominican] Decree elapsed on April 7, 1995, two months after the [Dominican] Decree was entered.

11. From February 2, 1995 until present, Sylvie relied upon the validity of the [Dominican] Decree entered by the [Dominican court].

12. Ever since the [Dominican] Decree was entered, Sylvie has held herself out as being divorced from [George].

13. Prior to [Geraldine's Rule 60 motion], at no time did anyone ever question the validity of the [Dominican] Decree.

14. Sylvie did not question the validity of the [Dominican] Decree because when purchasing a home in 1995, Sylvie successfully proved the validity of the [Dominican] De-

---

**10.** These arguments were made in relation to Nancy's opposition to Geraldine's motion for substitution. Nancy argued that, because Geraldine had failed to make a threshold showing that she was entitled to relief under Rule 60(b), it was not necessary for the family court to grant the motion for substitution. Specifically, Nancy stated:

Under the papers, our arguments flow that this is not a void judgment and that their claim for fraud is time-barred and that Rule [60(b)(6)] is not a valid option under the way they pled it. So, I don't think we need to substitute.

. . . .

Now, if you decide to, after the Rule [60(b)] threshold hearing if that's decided in their favor, then yeah, obviously we have to substitute and proceed (indiscernible) whatever proceedings we end up going to and possibly for the purposes of taking an appeal as well (indiscernible). . . .

**11.** This appears to be a reference to either *In re Estate of George Patrick Dubie*, P. No. 06–1–0700, or *Personal Prosperity, Inc. v. Dubie*, Civil No. 07–1–2141–11 GWBC, both in the Circuit Court of the First Circuit.

cree to an attorney in the province of Quebec, Canada.

15. In reliance on the [Dominican] Decree, Sylvie and [George's] daughter, Felicia ("Felicia"), had her last name changed to "Dubie" so that she would be able to live with her father.

16. In 1995, the U.S. Embassy certified and recognized the [Dominican] Decree by acknowledging the Dominican Republic divorce procedures.

17. In or around March 1996, after his divorce from Sylvie, [George] and [Geraldine] met. [Geraldine] is co-founder of the diet herbal supplement company, "Herbalife."

18. Shortly thereafter, while residing in Hawai'i, [George] introduced [Geraldine] to Sylvie.

19. With full knowledge of the [Dominican] Decree, on or about April 30, 1996, [Geraldine] completed and submitted a Marriage License Application to the Department of Health for the State of Hawai'i.

20. The application for marriage license indicated that [George's] marriage to Sylvie ended in divorce in 1995 in the Dominican Republic, Caribbean.

21. [Geraldine] signed the Marriage License Application and swore under oath that the information contained in the application was true and correct to the best of her knowledge.

22. On May 1, 1996, [George] and [Geraldine] participated in a ceremonial marriage performed by a person duly authorized to perform marriages in the State of Hawai'i.

23. At the time of the marriage ceremony, [Geraldine] had knowledge, or at least, had constructive knowledge of the [Dominican] Decree and that it was obtained in the Dominican Republic.

24. In the following few years, [George] and [Geraldine] met with Sylvie and Felicia in Ottawa in 1997, and in Disneyworld in 1998.

25. Based on Sylvie's meetings with [George] and [Geraldine], Sylvie had an opportunity to observe [George] and [Geraldine's] relationship. [George] relied upon the validity of the [Dominican] Decree and held himself out as being divorced. Sylvie also observed that after [George] and [Geraldine] were married, they acted like a married couple, lived together and introduced each other as husband and wife.

26. [Geraldine] established a Qualified Terminable Interest Property Trust ("QTIP Trust") and named Sylvie and [George's] children as beneficiaries of the QTIP Trust.

27. In November 2003, [Geraldine] filed a petition for divorce and the [family court] granted it on November [28], 2003.

28. After the [11/28/03 Decree] was entered, [Geraldine] continued to portray the image that she and [George] were still married in order to protect her image as well as the image of her company, "Herbalife."

29. On July 2, 2006, [George] was shot and killed in Thailand. A Report of Death of An American Citizen was filed on November 8, 2006.

## [IV.] CONCLUSIONS OF LAW

30. The [family court] has subject matter jurisdiction and personal jurisdiction over the parties pursuant to HRS § 580–1.

31. [Geraldine's] claims sound in fraud or other intentional misconduct, and therefore are time-barred pursuant to [HFCR Rule] 60(b)(3).

32. Determining whether a judgment should be set aside pursuant to Rule 60(b) of the [HFCR] is not a matter of discretion.

33. In the sound interest of finality, the concept of a void judgment must be narrowly restricted.

34. [Geraldine] does not have standing to collaterally attack the validity of the [Dominican] Decree in the [family court].

35. The [Dominican] Decree is recognized by the [family court] under the principle of comity. The [11/28/03 Decree] is not void *ab initio* and should not be set aside.

36. The facts in this case are not enough to overcome the presumption of validity of [Geraldine's] marriage to [George].

37. [George] and [Geraldine's] marriage is not void because the purported impediment-the alleged bigamous marriage-was eliminated by [George's] death.

38. The [Dominican] Decree cannot be set aside based on the principle of res judicata.

39. [Geraldine] is estopped from asserting that [her] marriage to [George] is void based on the principle of estoppel and unclean hands.

40. Property settlement agreements between husband and wife made in contemplation of divorce or judicial separation are favored by the courts and will be strictly enforced if fair and equitable and not against public policy.

41. The property division portion of a Divorce Decree is an enforceable contract and should not be set aside.

42. [Geraldine's] assertion to set aside the property division portion of the [11/28/03 Decree] is really a creditor's claim which should be decided by the probate court.

43. [George] and [Geraldine] are at the very least, putative spouses for purposes of this court deciding property division issues.

44. [Geraldine's] claims to set aside the [11/28/03 Decree] and the [11/28/03 Decree's] property division portion are based on fraud and are therefore barred by the one-year statute of limitations pursuant to Rule 60(b)(3) of the [HFCR].

(Formatting altered) (citations omitted).

## C. ICA Appeal

In her Opening Brief, Geraldine alleged that the family court erred in (1) refusing to vacate the 11/28/03 Decree because it was void; (2) denying relief or an evidentiary hearing pursuant to HFCR Rule 60(b)(6); (3) entering FOFs 6-8, 10-17, 19, 22-23, 25, and 27-28; and (4) entering COLs 30-32, and 34-44.

In her Answering Brief, Nancy essentially reiterated the arguments she presented in the family court. Nancy further argued that Geraldine was not entitled to an evidentiary hearing on her Rule 60(b)(6) motion, insofar as the ICA held in *Hayashi* that the family court may decide a Rule 60(b)(6) motion without a hearing.

Geraldine did not raise any substantively new arguments in her Reply Brief.

The ICA filed its published opinion in the instant case on April 12, 2010. *Cvitanovich–Dubie*, 123 Hawai'i at 266, 231 P.3d at 983. With regard to Geraldine's Rule 60(b)(4) claim that the family court lacked subject matter jurisdiction to enter the 11/28/03 Decree because the Dominican Decree was void, the ICA held that the Dominican Decree was not entitled to "pro forma recognition" on the basis of comity, *id.* at 273–75, 231 P.3d at 990–92, but was entitled to practical recognition on the basis of quasi-estoppel, *id.* at 275–80, 231 P.3d at 992–97. Accordingly, the ICA held that, based on FOFs 11 through 25,[12] "the family court did not abuse its discretion in finding that Geraldine was estopped from challenging the validity of the Dominican Decree, and COL 39 is not wrong." *Id.* at 280, 231 P.3d at 997.

The ICA further held that Geraldine's claims of fraud and undue influence fell under Rule 60(b)(3). *Id.* at 281–82, 231 P.3d at 998–99. The ICA noted that:

[Rule 60(b)(3)] does not specify upon whom the adverse party must have committed the fraud, misrepresentation, or other misconduct. Therefore, although Geraldine characterizes [George's] alleged fraud as "fraud on the court," that fraud claim nevertheless still falls under HFCR Rule 60(b)(3). Further, a plain reading of HFCR Rule 60(b) reveals that "undue influence" falls within Rule 60(b)(3) as "other misconduct."

*Id.* at 282, 231 P.3d at 999.

The ICA further noted that Geraldine's claims were filed more than one year after

---

12. The ICA held that FOFs 11–16, 19, and 25, and a portion of FOF 23, were not clearly erroneous. *Id.* at 276–78, 231 P.3d at 993–95. The ICA further held that any error in the challenged portions of FOFs 6, 7, 10, 17 and 28 was harmless. *Id.* at 282, 231 P.3d at 999. The ICA did

not address Geraldine's remaining challenges to the FOFs, in light of its conclusion that Geraldine was estopped from challenging the Dominican Decree. *Id.* at 278, 283, 231 P.3d at 994, 1000.

the 11/28/03 Decree was entered, and were therefore untimely under Rule 60(b)(3). *Id.* Accordingly, the ICA held, "the family court did not abuse its discretion by failing to provide Geraldine relief or a hearing regarding [her claims]." *Id.*

In light of the foregoing, the ICA did not address the remaining issues raised by Geraldine in her Opening Brief. On May 3, 2010, the ICA filed its judgment affirming the family court's "Order Denying Plaintiff's Motion for Post–Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60 [ (b) ], Filed on June 28, 2007."

### D. Geraldine's application for a writ of certiorari

Geraldine timely filed an application for a writ of certiorari on July 29, 2010. Nancy timely filed a response on August 12, 2010.

In her application, Geraldine presents the following questions:

A. Are estoppel or quasi estoppel available as affirmative defenses to bar relief from a clearly void *ab initio* Hawaii divorce decree, where allowing estoppel would vitalize that which multiple Hawaii statutes declare void, legalize what public policy and the law have forbidden, and violate this [c]ourt's holdings in *Godoy v. County of Hawaii*, 44 Haw. 312, 354 P.2d 78 (1960) and *Alvarez Family Trust v. Ass'n of Owners*, 121 Hawai'i 474, 221 P.3d 452 [ (2009) ]?

B. Is the application of quasi estoppel in this case inconsistent with this [c]ourt's holding· in *Yuen Shee v. London* [*Guarantee*] *and Accident*, 40 Haw. 213 (1953), and in facial violation of *Anderson v. Anderson*, 59 Haw. 575, 585 P.2d 938 (1978)?

C. Did the Intermediate Court of Appeals (ICA) commit grave error when it afforded practical recognition to a void *ab initio* foreign divorce decree?

D. Did the ICA commit grave error when it affirmed estoppel in favor of a litigant with unclean hands as a matter of law, and against one whose hands were clean as a matter of law?

E. Did the ICA commit grave error when it held that the standard of review for findings of fact entered in the absence of any evidentiary hearing is clearly erroneous, rather than *de novo*, and refused to consider "the weight of the evidence" and the "credibility" of witnesses when there was no live testimony?

F. Did the ICA commit grave error when it held that undue influence and fraud on the court fall within HFCR Rule 60(b)(3), rather than HFCR Rule 60(b)(6), and that the alternative relief sought—i.e., to set aside the property settlement portion of the decree—was therefore time barred?

## II. Standards of Review

### A. HFCR Rule 60(b)(4) motions

■ Under Rule 60(b)(4),

The determination of whether a judgment is void is not a discretionary issue. It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law.

*In re Hana Ranch Co.*, 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982) (citation omitted).

■ Accordingly, we review the family court's denial of a HFCR Rule 60(b)(4) motion de novo.

### B. HFCR Rule 60(b)(6) motions

■ The family court's denial of a motion under HFCR Rule 60(b)(6) is reviewed for abuse of discretion. *Pratt v. Pratt*, 104 Hawai'i 37, 42, 84 P.3d 545, 550 (2004). As the ICA noted in *Hayashi:*

[s]ince Rule 60(b)(6) relief is contrary to the general rule favoring finality of actions, the court must carefully weigh all of the conflicting considerations inherent in such applications. Once the court has made a determination to grant or deny relief, the exercise of its discretion will not be set aside unless the appellate court is persuaded that, under the circumstances of the case, the court abused its discretion.

4 Haw.App. at 291, 666 P.2d at 175 (citations omitted).

 "[A]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Buscher v. Boning*, 114 Hawai'i 202, 211, 159 P.3d 814, 823 (2007) (brackets in original) (quoting *Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006)). In addition, "[t]he burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." *In re RGB*, 123 Hawai'i 1, 17, 229 P.3d 1066, 1082 (2010) (brackets in original) (citation omitted).

### III. Discussion

Geraldine's Rule 60 motion sought relief on alternative grounds pursuant to Rule 60(b)(4) and Rule 60(b)(6). With regard to Rule 60(b)(4), Geraldine argued in the family court that the 11/28/03 Decree was void on the ground that Geraldine and George were never legally married because the Dominican Decree was void. The family court denied Geraldine's motion in this respect on several grounds, including that the Dominican Decree was entitled to comity, and that Geraldine was estopped from challenging the validity of the Dominican Decree. On appeal, the ICA affirmed, concluding that Geraldine was estopped from challenging the validity of the Dominican Decree. *Cvitanovich–Dubie*, 123 Hawai'i at 275–80, 231 P.3d at 992–97. Geraldine argues that the ICA erred because estoppel is inapplicable to the facts of the instant case. As set forth below, although the ICA did not err in affirming the family court's order with regard to Geraldine's claims under Rule 60(b)(4), its reasoning was erroneous in part. Specifically, the ICA was not required to reach the issue of estoppel

because the 11/28/03 Decree is not void within the meaning of Rule 60(b)(4).

Alternatively, Geraldine argued in the family court that the property division portion of the 11/28/03 Decree should be set aside under Rule 60(b)(6), on the ground that the property division was the result of "fraud on the court" and "undue influence." The family court denied Geraldine's motion in this respect, finding that Geraldine's claims "sound[ed] in fraud or other intentional misconduct[,]" and were therefore barred by the one-year limitation on motions brought pursuant to Rule 60(b)(3). The ICA affirmed, concluding that Geraldine's claims of "fraud on the court" and "undue influence" fell within Rule 60(b)(3) and were accordingly untimely. *Id.* at 281–82, 231 P.3d at 998–99. Geraldine argues that the ICA erred because "fraud on the court" and "undue influence" are properly considered under Rule 60(b)(6). As set forth below, the ICA did not err in affirming the family court's order in this respect.

### A. Geraldine could not be estopped from challenging the family court's jurisdiction to enter the 11/28/03 Decree

 The ICA held that the circuit court erred in COL 35 in recognizing the Dominican Decree on the basis of comity, *id.* at 273–75, 231 P.3d at 990–92, but that the Dominican Decree was nonetheless entitled to practical recognition based on principles of quasi-estoppel, *id.* at 275–80, 231 P.3d at 992–97. Having thus concluded that Geraldine was estopped from contesting the validity of the Dominican Decree, the ICA concluded that it was not required to address Geraldine's points concerning the adequacy of notice to her of the Dominican Decree, or whether the Dominican Decree was subject to collateral attack.[13] *Id.* at 280, 231 P.3d at 997. Accord-

---

**13.** As set forth in the family court's COLs, the family court provided several additional alternative grounds that could support its decision to deny Geraldine's Rule 60(b)(4) motion, including that Geraldine did not have standing to collaterally attack the Dominican Decree in the family court. There is substantial case law dealing with each of these issues. *See generally*, R.F. Chase, Annotation, *Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties*, 13

A.L.R.3d 1419 (1967); Annotation, *Vacating or Setting Aside Divorce Decree After Remarriage of Party*, 17 A.L.R.4th 1153, 1225–32 (1982) (discussing decisions where a divorce decree is contested by a "[s]ubsequent husband of divorced wife" or "[s]ubsequent wife of divorced husband"). However, in light of the conclusion that the 11/28/03 Decree is not void within the meaning of Rule 60(b)(4), this court need not address those issues.

ingly, it appears that the ICA concluded that the family court did not reversibly err in denying the Rule 60(b)(4) portion of Geraldine's Rule 60 motion, on the ground that Geraldine was estopped from contesting the validity of the Dominican Decree. *Id.* at 275–80, 231 P.3d at 992–97. In essence, the ICA concluded that Geraldine was estopped from asserting that the 11/28/03 Decree was void.

 However, Geraldine argued that the invalidity of the Dominican Decree deprived the family court of jurisdiction to enter the 11/28/03 Decree. "[I]t is well-settled that subject-matter jurisdiction cannot be conferred upon a court by agreement, stipulation, or consent of the parties[.]" *Gilmartin v. Abastillas,* 10 Haw.App. 283, 292, 869 P.2d 1346, 1351 (1994). Moreover, "[t]he lack of jurisdiction over the subject matter cannot be waived by the parties." *Williams v. Aona,* 121 Hawai'i 1, 8, 210 P.3d 501, 508 (2009) (quoting *Chun v. Employees' Ret. Sys.,* 73 Haw. 9, 13, 828 P.2d 260, 263 (1992)). It follows that jurisdiction similarly cannot be created by estoppel. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, . . . principles of estoppel do not apply[.]") (citations omitted).

Accordingly, Geraldine could not be estopped from challenging the family court's jurisdiction to enter the 11/28/03 Decree. The ICA's determination that Geraldine was estopped from challenging the Dominican Decree thus cannot resolve whether the 11/28/03 Decree is void for lack of subject matter jurisdiction pursuant to HFCR Rule 60(b)(4), and the ICA erred in failing to address that issue.

### B. The 11/28/03 Decree is not void under Rule 60(b)(4)

 Geraldine argues that the family court's 11/28/03 Decree is void because, as a result of the invalid Dominican Decree, she and George were not legally married, and the

family court lacked jurisdiction to enter a divorce decree involving unmarried persons. We conclude that Geraldine's arguments do not fall within the scope of Rule 60(b)(4).

 "In the sound interest of finality, the concept of a void judgment must be narrowly restricted." *Dillingham Inv. Corp. v. Kunio Yokoyama Trust,* 8 Haw.App. 226, 233, 797 P.2d 1316, 1320 (1990) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.25[2], at 60–225, 60–229, 60–230 (2d ed. 1990)). "The principles of judicial economy and judicial finality operate as constraining influences upon the generosity of the courts in declaring judgments void." *Isemoto Contracting Co., Ltd. v. Andrade,* 1 Haw.App. 202, 206, 616 P.2d 1022, 1026 (1980). The ICA has explained that:

> The determination of whether a judgment is void is not a discretionary issue. It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law.[14] Wright & Miller, *Federal Practice and Procedure: Civil* s 2862 (1973). Other authorities, cognizant of the extraordinary remedy afforded by the rule and the need to narrowly define it, have stated:
>
>> In brief, then, except for the rare case where power is plainly usurped, *if a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgment, whether right or wrong, are not subject to collateral attack . . . .*

*In re Hana Ranch Co.,* 3 Haw.App. at 146, 642 P.2d at 941–42 (emphasis added) (ellipses in original) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.25 (1980)); *see also Dillingham Inv. Corp.,* 8 Haw.App. at 233–34, 797 P.2d at 1320 ("[I]f a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgments, whether right or wrong, are not subject to

---

**14.** Geraldine has not argued that the family court lacked jurisdiction over the parties, or that the 11/28/03 Decree violated due process. Accord-

ingly, we do·not address these other two bases on which a judgment may be found void pursuant to HFCR Rule 60(b)(4).

collateral attack, so far as jurisdiction over the subject matter is concerned.") (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.25[2], at 60–229, 60–230 (2d ed. 1990)).

It should be noted that this court has concluded that a judgment was void under Rule 60(b)(4) on only one occasion. In *Stafford v. Dickison*, 46 Haw. 52, 63, 374 P.2d 665, 672 (1962), we held that a default judgment was void under Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(4) [15] on the ground that the defendant had been denied due process. There, a default judgment was ordered against the defendant during a hearing at which defendant did not appear. *Id.* However, "defendant's nonappearance was due to the court's abuse of discretion in permitting the withdrawal of his counsel without notice." *Id.* at 63, 374 P.2d at 671. Moreover, the court "erroneously reliev[ed] plaintiff of the duty of giving notice of application for default judgment" to the defendant. *Id.* Accordingly, this court concluded that the defendant did not have proper notice, and held that the default judgment was void pursuant to HRCP Rule 60(b)(4). *Id.* at 63, 374 P.2d at 672.

In the instant case, there can be no question that Geraldine's Complaint for Divorce was "in the class of suits" that the family court "has the general power to adjudicate." *See Dillingham Inv. Corp.*, 8 Haw.App. at 233–34, 797 P.2d at 1320. The family court has "[e]xclusive original jurisdiction in matters of annulment, divorce, and separation, ... subject [ ] to appeal according to law[.]" HRS § 580–1 (1993). "The family court shall decree a divorce from the bond of matrimony upon the application of either party when the court finds ... [t]he marriage is irretrievably broken[.]" HRS § 580–41(1) (1993). "If after a full hearing, the court is of opinion that a divorce ought to be granted from the bonds of matrimony a decree shall be signed, filed and entered, which shall take effect from and after such time as may be fixed by the court in the decree." HRS § 580–45 (1993).

Geraldine filed her Complaint for Divorce on November 6, 2003. By signing the Complaint, Geraldine "declare[d], under penalty of perjury, that the statements made [therein were] true and correct to the best of [her] knowledge, information and belief." The Complaint read in pertinent part as follows:

1. **Jurisdiction.**

I and/or my spouse, the Defendant, have lived or have been physically present in the State of Hawai'i for a continuous period of at least six (6) months *and* I have lived and/or been physically present on the Island of O'ahu for a continuous period of at least three (3) months immediately preceding this application.

2. **Marriage**

The parties (plaintiff and spouse) are lawfully married to each other.

. . . .

8. **Grounds**

Pursuant to HRS Section 580–41, I allege that the grounds for divorce are as follows ...

X̲ The marriage is irretrievably broken.

. . . .

**It is requested of the Court:**

That a decree be entered granting a divorce from the bonds of matrimony. . . .

On November 7, 2003, George filed an Appearance and Waiver, acknowledging receipt of a filed copy of the Complaint and Summons in the divorce action, and consenting to a hearing of the complaint without his presence.

Based on the foregoing, the family court did not "plainly usurp[ ]" power in granting the 11/28/03 Decree. *See Dillingham Inv. Corp.*, 8 Haw.App. at 233–34, 797 P.2d at 1320; *see also Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir.1986) ("[A] court will be

---

**15.** The ICA has explained that:

Rule 60(b), HFCR, is similar to Rule 60(b), [HRCP] and Rule 60(b), Federal Rules of Civil Procedure (FRCP), except for some minor variations which do not affect the provisions concerned here. Therefore, the treatises and cases interpreting HRCP, Rule 60(b) and FRCP, Rule 60(b) provide persuasive reasoning for the interpretation of HFCR 60(b).

*Hayashi*, 4 Haw.App. at 290 n. 6, 666 P.2d at 174 n. 6.

deemed to have plainly usurped jurisdiction only when there is a 'total want of jurisdiction' and no arguable basis on which it could have rested a finding that it had jurisdiction.") (citation omitted).

Nevertheless, Geraldine argues that the 11/28/03 Decree is void because "divorce presupposes and requires a valid marriage." Geraldine further argues that the 11/28/03 Decree is void pursuant to HRS § 1–6, which provides that "[w]hatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." Put another way, Geraldine argues that her marriage was bigamous and therefore violated prohibitory law, and that the marriage was therefore void *ab initio* pursuant to HRS § 1–6.

Assuming arguendo that the question of whether a marriage is valid goes to the family court's jurisdiction to enter a divorce,[16] Geraldine's challenges to the family court's jurisdiction would have been relevant had she raised them in the divorce proceedings or in a direct appeal. However, on a Rule 60(b)(4) motion, the principle of finality narrows the scope of review. *Dillingham Inv. Corp.*, 8 Haw.App. at 233–34, 797 P.2d at 1320. Because the family court had "power to adjudicate the issues in the class of suits to which the case belongs," i.e., divorce proceedings, its judgment is not subject to collateral attack pursuant to HFCR Rule 60(b)(4). *See In re Hana Ranch Co.*, 3 Haw. App. at 146, 642 P.2d at 941–42 (citation omitted) ("[I]f a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgment, whether right or wrong, are not subject to collateral attack."); *see also Dillingham Inv. Corp.*, 8 Haw.App. at 233–34, 797 P.2d at 1320 ("[I]f a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgments, whether right or wrong, are not subject to

16. We note that HRS § 580–1, concerning the jurisdiction of the family court, provides only that "[n]o absolute divorce from the bond of matrimony shall be granted for any cause *unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least six months* next preceding the application therefor." (Emphasis added). HRS § 580–1 does not contain a jurisdictional requirement that the parties be lawfully married in order to seek a divorce. Rather, it appears that a valid marriage is more properly considered a *substantive* requirement for a valid divorce. *See* HRS § 580–1 (setting forth when the family court "shall decree a divorce *from the bond of matrimony*") (emphasis added); *cf. Whitehead v. Whitehead*, 53 Haw. 302, 315–16, 492 P.2d 939, 947 (1972) (noting that the "jurisdictional" nature of the domicile requirement in HRS § 580–1 did not mean that the court "was without authority to hear the case in the absence of the required proof of domicile" but that the domicile provision "sets forth a substantive requirement for divorce"); *Puckett v. Puckett*, 94 Hawai'i 471, 482–83, 16 P.3d 876, 887–88 (App. 2000) (applying *Whitehead*, 53 Haw. at 315, 492 P.2d at 947); *see also Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir.1980) (rejecting an argument that a judgment was void under FRCP Rule 60(b)(4), and noting that an "error in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction" and that "[s]uch an erroneous interpretation does not render the judgment a complete nullity").

*Tagupa v. Tagupa*, 108 Hawai'i 459, 121 P.3d 924 (App.2005), further supports an inference

that the requirement of a valid marriage is not jurisdictional. There, Ronnie–Jean Kuulei Tagupa (Ronnie–Jean) and Vincent Peter Tagupa (Vincent) were married on September 15, 1989. *Id.* at 459, 461, 121 P.3d at 924, 926. In 2001, Ronnie–Jean filed a Complaint for Divorce and Vincent subsequently filed a Counter–Claim for Annulment. *Id.* at 461–62, 121 P.3d at 926–27. Ronnie–Jean subsequent filed a Certified Copy of the Judgment of Divorce, indicating that Thornton G. Sanders (Sanders) obtained a Judgment of Divorce terminating his marriage to Ronnie–Jean on December 21, 1989. *Id.* at 462, 121 P.3d at 927. Despite this undisputed evidence that Ronnie–Jean's divorce from Sanders had not been finalized at the time of her marriage to Vincent, the family court denied Vincent's claim for annulment and entered a divorce decree. *Id.*

On appeal, the ICA concluded that Ronnie–Jean and Vincent had not satisfied the requirements for a valid marriage contract because Ronnie–Jean still had a living lawful husband at the time of her marriage to Vincent. *Id.* at 465, 121 P.3d at 930. The ICA concluded that the family court abused its discretion in entering the divorce decree and denying Vincent's claim for annulment, and accordingly vacated portions of the family court's divorce decree and remanded. *Id.* at 465–67, 121 P.3d at 930–32 (holding that "the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant"). Although the ICA determined that the family court erred in entering the divorce decree, it did not state that the error was jurisdictional.

collateral attack, so far as jurisdiction over the subject matter is concerned.").

Accordingly, although the ICA erred in its reasoning, it did not err in affirming the family court's order denying Geraldine's motion under Rule 60(b)(4).[17]

## C. Geraldine's claims of "fraud on the court" and "undue influence" fall within Rule 60(b)(3) and are therefore untimely

In addition to her argument under Rule 60(b)(4), Geraldine argues that the Property Settlement Agreements attendant to the 11/28/03 Decree should be set aside under Rule 60(b)(6) because they were the result of George's "fraud upon the court" and "undue influence." However, the ICA concluded that Rule 60(b)(3) applies to those claims. *Cvitanovich–Dubie*, 123 Hawaiʻi at 281–82, 231 P.3d at 998–99. Accordingly, the ICA concluded that Geraldine's Rule 60 motion was untimely under Rule 60(b)(3), because it was brought more than one year after the 11/28/03 Decree was entered. *Id.* at 282, 231 P.3d at 999. As set forth below, the ICA did not err in concluding that Geraldine's claims of "fraud upon the court" and "undue influence" were properly considered under principles applicable to Rule 60(b)(3) motions, and were accordingly untimely.

Rule 60(b)(3) provides that the court may relieve a party of a final judgment for the reasons of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Under Rule 60(b)(3), a motion for relief from judgment must be made "not more than one year after the judgment, order, or proceedings was entered or taken." Rule 60(b)(3).

In contrast, Rule 60(b)(6) provides that the court may relieve a party of a final judgment for "any other reason justifying relief[.]" A motion for relief under Rule 60(b)(6) must be made "within a reasonable time." Rule 60(b). The ICA has explained that, in bringing a motion under Rule 60(b)(6), a movant must meet three threshold requirements: "the movant must show that (1) *the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5)*; (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time." *Hayashi*, 4 Haw.App. at 290, 666 P.2d at 174 (emphasis added) (citation omitted).

In the instant case, Geraldine filed her Rule 60 motion on June 28, 2007, more than three years after the family court's 11/28/03 Decree. Accordingly, if her claims are construed as falling within the provisions of Rule 60(b)(3), her Rule 60 motion was untimely. *See* Rule 60(b). In contrast, if Geraldine's claims are construed as falling within the provisions of Rule 60(b)(6), relief is available if the court finds her motion was made "within a reasonable time," and there are "reason[s] justifying relief." *See* Rule 60(b); *see also Hayashi*, 4 Haw.App. at 290–91, 666 P.2d at 174–75.

As set forth below, Geraldine's claims of "fraud upon the court" and "undue influence" fall within the provisions of Rule 60(b)(3) and are therefore untimely.

### 1. Fraud on the court

■■■■■ This court has noted that, "[s]ince the remedy for fraud on the court is far reaching, it only applies to very unusual cases involving 'far more than an injury to a single litigant[,]' but rather, a 'corruption of the judicial process itself.'" *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawaiʻi 408, 431 n. 42, 32 P.3d 52, 75 n. 42 (2001) (citation omitted) (some brackets in original); *see also Matsuura v. E.I. Du Pont de Nemours & Co.*, 102 Hawaiʻi 149, 171, 73 P.3d 687, 709 (2003) (Acoba, J., concurring and dissenting)

---

17. Based on the foregoing, the ICA was not required to address whether Geraldine was estopped from contesting the validity of the Dominican Decree. In addition, insofar as FOFs 11 through 16, 19, 25 and that part of FOF 23 concerning Geraldine's knowledge of the Dominican Decree, go to either the validity of the Dominican Decree or Geraldine's ability to collater-

ally attack the Dominican Decree, the ICA was not required to address Geraldine's challenge to those FOFs. Accordingly, we do not address Geraldine's challenges to the ICA's application of quasi-estoppel, and need not resolve whether the ICA applied the proper standard of review in considering the family court's FOFs.

("fraud on the court is not fraud on a party"). It is generally accepted that fraudulent conduct such as perjury or non-disclosure by a party, standing alone, is insufficient to make out a claim for fraud on the court. *See, e.g., Gleason v. Jandrucko,* 860 F.2d 556, 559–60 (2d Cir.1988) ("[N]either perjury nor nondisclosure, by itself, amounts to anything more than fraud involving a single litigant."); *Lockwood v. Bowles,* 46 F.R.D. 625, 632–34 (D.D.C.1969) ("[W]here the court or its officers are not involved, there is no fraud upon the court within the meaning of [FRCP] Rule 60(b)."); *see also* 12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.21[4][c] (3d ed. 2010) ("Fraud on the court may not be established simply by showing some misconduct by one of the parties to the suit. . . . If fraud on the court were to be given a broad interpretation that encompassed fraudulent misconduct between the parties, a judgment would always remain subject to challenge, and the one-year time limitation applicable to motions based on Rule 60(b)(3) would be meaningless.") (footnotes omitted).

This court has similarly explained that:

Not any fraud connected with the presentation of a case amounts to fraud on the court. It must be a "direct assault on the integrity of the judicial process." Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court. Examples of such fraud include "bribery of a judge," and "the employment of counsel in order to bring an improper influence on the court."

*Schefke,* 96 Hawai'i at 431, 32 P.3d at 75 (citations omitted); *cf. Child Support Enforcement Agency v. Doe,* 98 Hawai'i 499, 504, 51 P.3d 366, 371 (2002) (holding that an allegation that "counsel had lied during the underlying proceedings in order to induce [a party] to agree to the judgment of paternity" was properly considered as fraud under HFCR Rule 60(b)(3)).

Here, the record does not establish that George knew the Dominican Decree was invalid, or that he deliberately misrepresented his marital status to the family court.[18] Moreover, Geraldine's allegation that George "conceal[ed] the fact that he had never divorced Sylvie" in order to "gain access to [the family court]," is an allegation of nondisclosure by an adverse party, rather than an allegation amounting to a " 'direct assault on the integrity of the judicial process.' "[19] *See*

18. We respectfully disagree with the dissent's assertion that Geraldine established George's knowledge of the invalidity of the Dominican Decree through (1) Geraldine's declaration that she realized, after George's death, that George and Sylvie were not lawfully divorced; and (2) an attorney's declaration that, in his view, the Dominican Decree was substantively invalid. Dissenting opinion at 163–64, 254 P.3d at 474–75. Respectfully, these declarations do not purport to address George's knowledge as to the validity of the Dominican Decree. Further, we are reluctant to ascribe import to the fact that, subsequent to their divorce, George and Sylvie were denominated as "husband" and "wife" in a Variation of Separation Agreement that altered their agreement with regard to custody of their daughter. *See* dissenting opinion at 163–64, 254 P.3d at 474–76. It is not uncommon for divorced parties to be referred to in this manner, *see, e.g., Weinberg v. Dickson–Weinberg,* 121 Hawai'i 401, 220 P.3d 264 (App.2009), *vacated in non-relevant part by Weinberg v. Dickson–Weinberg,* 123 Hawai'i 68, 229 P.3d 1133 (2010), and the mere use of those terms in the agreement does not establish that George knew the Dominican Decree was invalid.

We also respectfully disagree with the dissent's suggestion that George concealed his marital status from the family court during the divorce proceedings because he filed an appearance and waiver form, and because George indicated in that form that he agreed to the matters set forth in an agreement incident to divorce. Dissenting opinion at 164, 254 P.3d at 475. Although these facts indicate that George "held himself out as being married to Geraldine," *id.,* they do not establish that he purposefully concealed information or made a fraudulent representation to the court.

We further note that it was Geraldine, rather than George, who declared, under penalty of perjury, that "[t]he parties ... [were] lawfully married to each other." In contrast, none of George's responsive submissions to the family court aver to the legality of his marriage to Geraldine.

19. The dissent cites *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 948 P.2d 1055 (1997), and *Southwest Slopes, Inc. v. Lum,* 81 Hawai'i 501, 918 P.2d 1157 (App.1996), for the proposition that "non disclosure can amount to fraud on the court when the party and the trial court have no reason to question the representation, and the court relies on the representation when issuing its decision." Dissenting opinion at 166, 254 P.3d at 477 (footnote omitted). However, *Kawamata Farms* and *Southwest Slopes* do not stand for this proposition and, in any event, are distinguishable.

*Schefke*, 96 Hawai'i at 431, 32 P.3d at 75. Although Geraldine styles this portion of her motion as one for "fraud on the court," the substance of her allegations does not rise to the level of fraud on the court. Accordingly, this allegation is properly evaluated as "fraud . . ., misrepresentation, or other misconduct of an adverse party" under Rule 60(b)(3).[20]

Geraldine cites several cases which she suggests stand for the proposition that her claim is properly considered under HFCR

> In *Kawamata Farms*, the circuit court concluded that the defendants had committed "discovery fraud upon the circuit court" by, inter alia, fraudulently asserting to the Discovery Master that the work product privilege barred discovery of certain documents. 86 Hawai'i at 229–30, 948 P.2d at 1070–71. Thus, *Kawamata Farms* did not involve "non-disclosure," but rather fraudulent misrepresentations that formed the substantive basis for the circuit court's discovery orders. Moreover, this court relied on the "egregious nature of the fraud" perpetrated by defendants in allowing the plaintiffs to seek additional affirmative relief under Rule 60(b)(3), notwithstanding that Rule 60(b) can generally only be used to set aside a prior order or judgment. *Id.* at 256–57, 948 P.2d at 1097–98.
>
> In *Southwest Slopes*, the asserted fraud involved a potentially false affidavit by a party, as well as an apparently false affidavit and letter by the party's *attorney.* 81 Hawai'i at 511, 918 P.2d at 1167. It is well-settled that fraud perpetuated by an officer of the court can constitute fraud on the court. *See Schefke*, 96 Hawai'i at 431, 32 P.3d at 75 (citations omitted) (noting that "the employment of counsel in order to bring an improper influence on the court" can constitute fraud on the court). Thus, the ICA recognized "*[t]he possibility* that Plaintiffs used fraud upon the court" in obtaining summary judgment. *Sw. Slopes*, 81 Hawai'i at 511, 918 P.2d at 1167 (emphasis added).

**20.** Because we conclude that Geraldine's claims do not constitute fraud on the court but rather "fraud . . ., misrepresentation, or other misconduct of an adverse party" that is properly considered under Rule 60(b)(3), we do not resolve whether fraud on the court properly falls under Rule 60(b)(3) or Rule 60(b)(6). Although the dissenting opinion urges us to address this issue, dissenting opinion at 167 n. 22, 254 P.3d at 478 n. 22, in light of our holding, any attempt to do so would be considered dicta.

**21.** In *Kawamata Farms*, this court held that a defendant's extensive discovery abuses constituted fraud on the court. 86 Hawai'i at 256–57, 948 P.2d at 1097–98. However, this court affirmed the grant of relief pursuant to HRCP Rule 60(b)(6). However, these cases are inapposite and accordingly do not support Geraldine's position.[21]

Accordingly, the ICA did not err in holding that the family court did not abuse its discretion in denying Geraldine relief in this respect.

## 2. "Undue influence"

■ The ICA concluded that "a plain reading of HFCR Rule 60(b) reveals that 60(b)(3), rather than Rule 60(b)(6). *Id.* at 257–58, 948 P.2d at 1098–99.

> In *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 239, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), an action was brought independent of Rule 60(b), for "leave to file a bill of review . . . to set aside a judgment[,]" *Id.* at 239, 64 S.Ct. 997, and the only discussion of FRCP Rule 60(b) was in the dissent, *id.* at 255–56, 64 S.Ct. 997. Moreover, *Hazel–Atlas Glass* was decided in 1944, at a time when "there was considerable doubt whether fraud was a ground for a motion under [FRCP] Rule 60(b) or whether it could be attacked only by an independent action." 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2860 at 310 (2d ed. 1995). In 1946, FRCP Rule 60(b) was amended to include "fraud" as an express ground for relief from judgment. FRCP Rule 60 advisory committee's notes on 1946 amdt.
>
> In *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 45 (1st Cir.1995), Reintjes brought an independent action for fraud on the ground that an employee of Riley Stoker committed perjury during arbitration proceedings that led to a settlement agreement two years earlier. The United States Court of Appeals for the First Circuit rejected the argument that Reintjes' claim could proceed as an independent action for fraud on the court, and instead concluded that "perjury alone" was insufficient to bring a common law cause of action for fraud independent of FRCP Rule 60(b)(3). *Id.* at 48–49. Accordingly, the court concluded that Rientjes' claim was subject to the limitations of FRCP Rule 60(b)(3) and was untimely since it was filed "some two years" after the underlying judgment. *Id.* at 45, 49.
>
> Finally, in *Southwest Slopes*, the ICA vacated a grant of summary judgment in defendant's favor on *direct appeal.* 81 Hawai'i at 502, 918 P.2d at 1158. The ICA noted "[t]he possibility that Plaintiffs used fraud upon the court when obtaining the summary judgment," and that "[f]raud, misrepresentation, and circumvention used to obtain a judgment are generally regarded as sufficient cause for the opening or vacating of the judgment." *Id.* at 511, 918 P.2d at 1167 (citation omitted). Although not directly relevant because it was decided on direct appeal, the ICA's conclusion indicates that fraud on the court is properly considered as a type of "fraud."

'undue influence' falls within Rule 60(b)(3) as 'other misconduct.' " *Cvitanovich–Dubie*, 123 Hawai'i at 282, 231 P.3d at 999. Geraldine argues that the ICA erred because "undue influence is deemed to be a matter within Rule 60(b)(6)[.]"

Rule 60(b)(3) allows a party to move for relief from judgment on the basis of "fraud ..., misrepresentation, or other misconduct of an adverse party[.]" Rule 60(b)(6) allows a party to move for relief for *"any other reason* justifying relief from the operation of the judgment." (Emphasis added). Thus, in order to take advantage of the potentially more lenient timeliness provisions in clause (6), "the motion must be based upon some reason other than those stated in clauses (1) through (5)." *Child Support Enforcement Agency*, 98 Hawai'i at 504, 51 P.3d at 371. Hawai'i courts have not directly addressed whether a claim of undue influence falls under clause (3) or (6) of Rule 60(b). However, the plain language of the rule indicates that clause (3) governs misconduct by the nonmoving party. *Compare* HFCR Rule 60(b)(3) ("fraud ..., misrepresentation, or other misconduct *of an adverse party* ") (emphasis added) *with* HFCR Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect"). Although undue influence is not specifically identified in clause (3), "other misconduct of an adverse party" is a catch-all provision that reasonably includes the "undue influence" Geraldine alleges.[22] *Cf.*

*Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988) ("For the term [misconduct] to have meaning in the [FRCP] Rule 60(b)(3) context, it must differ from both 'fraud' and 'misrepresentation.' Definition of this difference requires us to take an expansive view of 'misconduct.' ").

Moreover, because HFCR Rule 60(b) was patterned after FRCP Rule 60(b),[23] the history of the federal rule is highly persuasive as to the purpose of the Hawai'i rule, absent contrary intent in Hawai'i. The history of the federal rule strongly supports the conclusion that undue influence falls within clause (3), rather than clause (6). The FRCP were adopted in 1937, and became effective in 1938. Order of December 20, 1937, 302 U.S. 783 (1937); 28 U.S.C.A. following § 723c. Prior to that time, the federal district courts were subject to an inflexible rule concerning relief from judgments, which generally prevented the district court from reconsidering its final judgments after the expiration of the term in which the judgment was rendered. James Wm. Moore & Elizabeth B.A. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 627 (1946). However,

[e]xceptions to this general rule were the utilization, under certain circumstances, of the ancillary remedies of coram nobis, coram vobis, audita querela, bill of review and bill in the nature of a bill of review— remedies which had grown up to give relief after term time in certain limited situa-

---

22. We respectfully disagree with the dissent's assertion that we have "abandon[ed] established statutory construction rules" by relying on the plain language of Rule 60(b)(3). Dissenting opinion at 168, 254 P.3d at 479. Moreover, our interpretation does not leave Rule 60(b)(3) "without any manageable limits," dissenting opinion at 168, 254 P.3d at 479, inasmuch as the rule is limited to the conduct of an adverse party. *See* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2864 at 352–53 ("Fraud by the party's own counsel, by a codefendant, or by a third-party witness does not fit within clause (3) of the rule, which requires fraud by an adverse party, and relief has been granted under clause (6) instead.").

Further, we respectfully disagree with the dissent's assertion that undue influence does not fall under Rule 60(b)(3) because it is "based on conduct that is different from fraud and misrepresentation." Dissenting opinion at 161, 254 P.3d at 472. If relief under Rule 60(b)(3) were limited

to conduct involving false representations, as the dissent asserts, the phrase "other misconduct" would be rendered surplusage. Although the dissent points to other "causes of action" (such as defamation, libel and slander) that also involve false representations, dissenting opinion at 168, 254 P.3d at 479, it does not appear that these causes of action could be grounds for setting aside a judgment pursuant to Rule 60(b)(3).

23. The HFCR were patterned after the HRCP, which in turn were patterned after the FRCP. J. Garner Anthony, Chairman, Hawai'i Procedural Rules Committee, *Foreword* to *Hawai'i Rules of Civil Procedure*, at ii (1953); Letter from the Honorable Paul C. Kokubun & V. Thomas Rice, Co–Chairmen, Hawai'i Family Court Rules Drafting Committee, to committee members (June 24, 1974) (attached to June 24, 1974 draft of HFCR). As discussed *supra* in note 15, the relevant portions of the current text of HFCR Rule 60(b) and FRCP Rule 60(b) are virtually identical.

tions; the occasional utilization of the doctrine of the court's inherent power over its judgments; and the independent action in equity to enjoin enforcement of a judgment.

*Id.* (footnote omitted).

When the FRCP were promulgated, they were "generally supposed to cover the field" concerning the practice for obtaining relief from judgments. Advisory Committee Notes to 1946 Amendment to FRCP Rule 60 (discussing the promulgation of the FRCP). However, a number of federal decisions initially concluded that efforts to obtain relief through the older ancillary and equitable remedies, such as a bill of review or coram nobis, were proper despite the adoption of the FRCP. *See id.; see also* Moore & Rogers, 55 Yale L.J. at 653–82. Accordingly, amendments to FRCP Rule 60(b) were promulgated in 1946 to "abolish[ ] the use of bills of review and the other common law writs referred to," and to permit "either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules[.]" Advisory Committee Notes to 1946 Amendment to FRCP Rule 60. Put another way, FRCP Rule 60(b) effectively superceded the ancillary and equitable remedies with respect to the practice for obtaining relief from judgments.

Federal courts have indicated that "[FRCP] Rule 60(b)(3) is the lineal descendent of the equity rule that a court may alter or annul, because of fraud or *undue influence*, a written instrument (such as a contract or patent-but also a court's own judgment), only if the fraud or undue influence is proved by clear and convincing evidence." [24] *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir.2008) (emphasis added) (citations omitted); *Massi v. Walgreen Co.*, No. 3:05–cv–425, 2008 WL 2066453, at *3 (E.D.Tenn. May 13, 2008). In contrast, FRCP Rule 60(b)(6), which was added with the amendments promulgated in 1946, was "an unprecedented addition to the Rules" that could be used to "grant relief in situations never covered by the old post-term remedies[.]" Note, *Federal Rule 60(B): Relief From Civil Judgments*, 61 Yale L.J. 76, 81 & n.25 (1952); *see also* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2864 at 350 (footnote omitted) (noting that FRCP Rule 60(b)(6) went "beyond the grounds for relief that would have been available under older procedures"). Thus, because a claim of undue influence was cognizable under the equity rules, it appears that it is properly cognizable under FRCP Rule 60(b)(3), rather than Rule 60(b)(6). *Cf. In re Leisure Corp.*, No. C–03–03012 RMW, 2007 WL 607696, at *5 (N.D.Cal. Feb.23, 2007) (holding that allegations of duress were properly considered under FRCP Rule 60(b)(3)); *Interactive Edge, Inc. v. Martise*, No. 97 Civ. 3354(RO), 1998 WL 35131, at *3 (S.D.N.Y. Jan.30, 1998) ("[Defendant's] allegations of threats from plaintiff's counsel, creating a climate of extreme duress under which [defendant] signed the Settlement Agreement, raise the specter of Rule 60(b)(3)[ ] . . . .").

Other states also appear to treat allegations of undue influence as "other misconduct of an adverse party" under provisions similar to HFCR Rule 60(b)(3). *See, e.g., Self v. Maynor*, 421 So.2d 1279, 1280–81 (Ala.Civ. App.1982) (holding that a claim of "fraud

---

**24.** The dissent asserts that this statement by the Seventh Circuit is erroneous because it cites *Hazel–Atlas Glass*, 322 U.S. at 244–45, 64 S.Ct. 997, for support, and the opinion in *Hazel–Atlas Glass* case does not contain the words "undue influence." Dissenting opinion at 169–70, 254 P.3d at 480–81. However, it is clear that, prior to the adoption of the 1946 amendments to the FRCP, a suit in equity could be used to alter or annul a written instrument or judgment on the grounds of fraud or undue influence. *See, e.g., Wagg v. Herbert*, 215 U.S. 546, 551–52, 30 S.Ct. 218, 54 L.Ed. 321 (1910) ("[I]t is well established that, in a suit in equity between parties, in which fraud, oppression, and undue influence are charged, the court is not concluded by that which appears on the face of the papers, but may institute an inquiry into the real facts of the transactions. *So thoroughly is this doctrine established that any discussion of the cases in this and other courts affirming it would be useless.* They rest upon elementary principles of equity.") (emphasis added); *cf. Griffith v. Bank of New York*, 147 F.2d 899, 901 (2d Cir.1945) (holding that an allegation that a judgment was procured by the trustee's threat to tie up the property indefinitely unless settlement was made constituted an allegation of duress or fraud sufficient to set aside a prior judgment under a court's equity powers).

and/or undue influence" does not fall within the purview of Alabama Rules of Civil Procedure Rule 60(b)(6) because "Rule 60(b)(6) is mutually exclusive from other rule 60(b) motions" and "the relief sought falls clearly within the purview of either 60(b)(1) or (2) or (3)"); *Rothschild v. Devos,* 757 N.E.2d 219, 224 n. 9 (Ind.Ct.App.2001) ("Duress and undue influence could presumably be grounds for relief from judgment under [Indiana Rules of Trial Procedure Rule] 60(B)(3) as 'other misconduct of an adverse party.'") (citation omitted); *Coppley v. Coppley,* 128 N.C.App. 658, 496 S.E.2d 611, 616–18 (1998) (considering allegations of "duress and/or undue influence" as "other misconduct of an adverse party" under North Carolina Rules of Civil Procedure Rule 60(b)(3)); *Knutson v. Knutson,* 639 N.W.2d 495, 498–500 (N.D. 2002) (considering allegations that a stipulated agreement attendant to a divorce decree was procured through undue influence under North Dakota Rules of Civil Procedure Rule 60(b)(iii)).[25]

Geraldine relies on *Hayashi,* 4 Haw.App. at 290, 666 P.2d at 174, for the proposition that "undue influence is deemed to be a matter within Rule 60(b)(6)[.]" However, *Hayashi* does not stand for that proposition. In that case, Wife moved for relief pursuant to HFCR Rule 60(b)(6), alleging, inter alia, undue influence by Husband. *Id.* at 288, 666 P.2d at 173. The ICA noted that relief under Rule 60(b)(6) requires that (1) "the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5);" (2) "there are exceptional circumstances justifying relief[;]" and (3) "the motion is made within a reasonable time." *Id.* at 290, 666 P.2d at 174–75. The ICA then went on to deny the relief requested because Wife's petition did not sufficiently allege "exceptional circumstances" and, therefore, her six-year delay in filing the motion was unrea-

sonable. *Id.* at 291, 666 P.2d at 175. Thus, the ICA disposed of the Rule 60(b)(6) motion without addressing the requirement that "the motion [be] based on some reason other than those specifically stated in clauses 60(b)(1) through (5)[.]" *Id.* Accordingly, *Hayashi* does not answer whether "undue influence" properly falls under the provisions of Rule 60(b)(3) or 60(b)(6), and Geraldine's assertion that "[t]he ICA ignored *Hayashi*" is misplaced.

■ Finally, although Geraldine argued in the ICA that the family court erred in failing to conduct an evidentiary hearing, she did not raise this issue in her application. Moreover, this argument is without merit. "The trial court may deny relief under Rule 60(b) without holding a hearing and may decide the issue on the basis of papers submitted." *Hayashi,* 4 Haw.App. at 293, 666 P.2d at 177 (citing *Ahlo,* 1 Haw.App. 324, 619 P.2d 112). Although an evidentiary hearing may have proved useful in developing or substantiating Geraldine's allegations, Geraldine did not move for or otherwise request an evidentiary hearing, but advised the family court that she was pursuing the "labor intensive evidentiary part" in the circuit court in a related case. Inasmuch as Geraldine did not, at any point appearing in the record, request that the family court conduct an evidentiary hearing, we cannot hold that the family court erred in failing to do so.

Accordingly, the ICA did not err in holding that the family court did not abuse its discretion in denying Geraldine relief in this respect.

### IV. Conclusion

For the foregoing reasons, we hold that the 11/28/03 Decree is not void under HFCR Rule 60(b)(4). We further hold that Geraldine's claims of "fraud on the court" and

25. We respectfully disagree with the dissent's conclusion that these cases are "inapposite" and have no bearing on whether a claim of undue influence can be considered under Rule 60(b)(6). Dissenting opinion at 170–71, 254 P.3d at 481–82. In each case, the court determined that a claim of undue influence could be brought under provisions similar to HFCR Rule 60(b)(3). Because a motion brought pursuant to Rule 60(b)(6) must be based on "some reason other

than those stated in clauses (1) through (5)[,]" a determination that a claim falls under Rule 60(b)(3) necessarily precludes consideration under Rule 60(b)(6). *Child Support Enforcement Agency,* 98 Hawai'i at 504, 51 P.3d at 371; *see also Self,* 421 So.2d at 1281 ("In the instant case the relief sought falls clearly within the purview of either 60(b)(1) or (2) or (3). Hence, rule 60(b)(6) would not be available to the wife.").

"undue influence" are properly considered under HFCR Rule 60(b)(3), and are therefore untimely. In light of these holdings, we need not address Geraldine's arguments concerning estoppel or the proper standard of review for the family court's FOFs.

Accordingly, the May 3, 2010 judgment of the ICA is affirmed.

Concurring and Dissenting Opinion by ACOBA, J.

I believe that jurisdiction over the divorce complaint filed by Petitioner/Plaintiff–Appellant Geraldine Cvitanovich–Dubie (Geraldine) existed in the family court of the first circuit (the court or the family court) for the reasons stated herein, but I respectfully dissent to the majority's holding that Geraldine's Hawaiʻi Family Court Rules (HFCR) Rule 60(b) (2010) claims sounding in fraud on the court and undue influence are barred under HFCR Rule 60(b)(3) because she failed to bring them within one year from the entry of judgment. In my view, her claims of fraud on the court and undue influence are both cognizable under HFCR Rule 60(b)(6). Accordingly, I would vacate the May 3, 2010 judgment of the Intermediate Court of Appeals (ICA) and the December 18, 2007 order of the family court that held to the contrary, and remand to the court for a hearing on both claims.

I.

On October 2, 1989, George Patrick Dubie (George) and Sylvie Bertin (Sylvie) were legally married in Honolulu. Upon Sylvie's application for divorce, in February 1995, a court in the Dominican Republic held a hearing and granted the divorce on the ground of incompatibility. The divorce decree listed Sylvie as being a domiciliary and resident of the West Indies, and Dubie as being a domiciliary and resident of California.

Neither party appealed from the divorce decree.

Four months later, in Canada, Sylvie and George entered into a separation agreement in which they referred to themselves as husband and wife.

In March 1996, Geraldine met George, and on April 30, 1996, they completed a marriage license application, in which George swore that his previous marriage had ended in divorce. George also indicated that his marriage to Geraldine was his twenty-third, and that his previous marriage had ended in September 1995 in the Dominican Republic.[1] On May 1, 1996, Geraldine and George were married in Hawaiʻi.

Five months after Geraldine's marriage to George, in October 1996, George and Sylvie amended their separation agreement by filing a "Variation of Separation Agreement" (amended separation agreement) in the Supreme Court of British Columbia, providing that their child's principal place of residence was "with the Husband in Hawaii."

In 2002, George began to spend time in Thailand, where, according to Geraldine, George used her money to invest in property. George allegedly told her that the property he had bought "belonged equally to both" of them. Geraldine stated that, in 2003, George suggested that they obtain a "temporary" divorce for business reasons, but keep the divorce secret and continue to live as though they were married.

On November 6, 2003, Geraldine filed a complaint for divorce. George received the complaint and summons, and submitted himself to the court's jurisdiction by signing an appearance and waiver form and filing it with the court. In furtherance of the divorce, George and Geraldine entered into marital agreements involving property.

The court granted the divorce on November 28, 2003. Pursuant to the divorce decree, each party was to retain his or her separate property and an equal portion of the joint property, except as provided in their marital agreements. The decree incorporated George and Geraldine's marital agreements.

On July 2, 2006, George died. According to Geraldine, only after George's death did she realize that he had "manipulated [her] through false statements, false promises, and other devices and techniques to transfer

---

1. The Dominican decree states that George and Sylvie were divorced in February 1995.

property (real and personal) and things of value to him in the course of [the] divorce proceedings."

## II.

In June 2007, Geraldine filed a motion for relief pursuant to HFCR Rule 60(b) (60(b) motion).[2] On June 19, 2007, she filed a motion to substitute Nancy Dubie, as personal representative of George's estate, for George in the instant case. In the 60(b) motion, Geraldine sought a judgment holding that the Geraldine–George 2003 divorce decree was void under HFCR Rule 60(b)(4) or, in the alternative, that the property division be set aside pursuant to HFCR Rule 60(b)(6). Allegedly, George had committed a fraud on the court, and Geraldine had been under the undue influence of George.

The 60(b) motion was based in part on the declarations attached thereto, "and evidence as may be submitted in supplementation of this Motion or at the hearing on this Motion[.]" In the memorandum accompanying the motion, Geraldine stated, "Space does not permit a detailed, fact-intensive showing in this Memorandum of all the particular ways in which the division was so inequitable, but *this will be shown in detail at the evidentiary hearing.*" (Emphasis added.) In opposition, Nancy[3] argued that "it is clear that [Geraldine's] allegations of 'undue influence' and 'transfer of property' amount to a claim for relief based on 'fraud.' " In Reply, Geraldine requested that "the court bifurcate the

60(b)(4) and 60(b)(6) [issues] and that evidence on [ ] 60(b)(4) be heard first." [4]

On October 8, 2008, the court held a hearing on the motion for substitution and on the 60(b) motion. Geraldine's counsel contended that substitution must be granted "whether [the court] ultimately grant[ed] the Rule 60 motion or not[,]" since the divorce created property rights that were not abated due to George's death. Nancy's counsel responded that the court did not have to substitute any parties because the judgment was not void, Geraldine's claim "for fraud [was] time barred" and "Rule [60(b)(6) was] not a valid option[.]" According to Nancy's counsel, the court was not required to hold a hearing and could decide the motion based on the papers; only if the court decided that a claim had merit should substitution occur. (Citing *Hayashi v. Hayashi*, 4 Haw.App. 286, 293, 666 P.2d 171, 176 (1983)).

At the hearing in connection with the 60(b) motion, Geraldine argued that the court should bifurcate the proceedings, ruling on the 60(b)(4) ground first, and reserving the 60(b)(6) ground for an evidentiary hearing:

> I think that the 60B.4 [sic] part of this case is amenable to summary judgment[.] . . .
>
> *And I think we can get rid of this whole thing when you grant summary judgment to us on that part of it. Bifurcate the 60(b)(6) part which is the labor intensive evidentiary part that you would rather not have to do* because it's going to take a long time, and that's what we're gonna do in the

---

**2.** HFCR Rule 60(b) provides in pertinent part:

(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: . . . (3) *fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;* (4) *the judgment is void;* . . . or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reason[ ] . . . (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or

proceeding, *or to set aside a judgment for fraud upon the court.*
(Emphases added.)

**3.** Although Nancy was substituted for George, Geraldine alleges that George, not Nancy, engaged in undue influence and fraud on the court. Thus, this opinion primarily refers to George, not Nancy, as the opposing party.

**4.** The majority asserts that Geraldine did not specifically request an evidentiary hearing. Majority opinion at 135, 254 P.3d at 446. Given that evidence was to be submitted "at the hearing", and the "inequitable" nature of the property division was to "be shown in detail at the evidentiary hearing[,]" Geraldine "requested" and sought an evidentiary hearing on her HFCR Rule 60(b)(6) claims.

circuit court is that case. Bifurcate the 60B.4, 60B.6 [sic].

(Emphasis added.) Based on the foregoing, it was presumed that if the court ruled that the judgment was not void under HFCR Rule 60(b)(4) and that HFCR Rule 60(b)(6) was a valid option for the fraud on the court and undue influence claims, then the court would hold an evidentiary hearing on those claims.

On December 18, 2007, the court entered an order denying the 60(b) motion. In February 2008, the court filed findings of fact and conclusions of law. The court concluded, *inter alia,* that Geraldine's marriage to George was not void, Geraldine was estopped from asserting that the marriage was void, and her claims to set aside the divorce decree were, in essence, based on fraud or other intentional misconduct, and barred by the one-year statute of limitations pursuant to HFCR Rule 60(b)(3). Geraldine appealed to the ICA, which affirmed the court. Geraldine filed an application for writ of certiorari (Application), arguing that the ICA erred in holding that she was estopped [5] from attacking the validity of the Dominican Decree, and that her claims sounding in fraud on the court and undue influence were barred.

### III.

In her Application, Geraldine first argues that the Hawai'i divorce decree is void under HFCR Rule 60(b)(4), which, as noted *supra,* provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding" because *"the judgment is void* [.]" (Emphasis added.) HFCR Rule 60(b)(4) is nearly identical to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(4). Because the language is nearly identical, cases construing HRCP Rule 60(b)(4) are instructive in the analysis of HFCR Rule 60(b)(4). Under

HRCP Rule 60(b)(4), "a judgment is void only if the court lacked subject matter jurisdiction, jurisdiction over the person, or violated due process[.]" *Bank of Hawaii v. Shinn,* 120 Hawai'i 1, 12, 200 P.3d 370, 381 (2008).

### A.

Geraldine is not contending the court lacked personal jurisdiction over the parties or violated due process. However, she maintains the Hawai'i divorce decree is void (1) because the Dominican court lacked jurisdiction to enter a divorce decree for the two non-residents, George and Sylvie; (2) inasmuch as the Dominican court lacked jurisdiction, the Dominican divorce decree was void; (3) since the divorce was void, George and Sylvie were still married when George married Geraldine; (4) the George–Geraldine marriage was thus void *ab initio* inasmuch as Hawai'i law prohibits bigamy and George was still married to Sylvie; and (5) because the marriage was void in the first place, the court lacked jurisdiction to enter a divorce decree between Geraldine and George.

To the contrary, the court had subject matter jurisdiction because whether Geraldine and George were legally married was not a precondition to jurisdiction over the divorce complaint. Subject matter jurisdiction is defined as "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." *Black's Law Dictionary* 931 (9th ed. 2009); *see also County of Hawai'i v. C & J Coupe Family Ltd. P'ship,* 119 Hawai'i 352, 368, 198 P.3d 615, 631 (2008) (defining subject matter jurisdiction by quoting *Black's Law Dictionary* ).

The family court has jurisdiction, in pertinent part, over "all proceedings under chapter 580[.]" Hawai'i Revised Statutes (HRS) § 571–14(a)(3) (Supp.2003). As set forth in

---

**5.** The ICA erred in holding that Geraldine was estopped from challenging whether the judgment was void inasmuch as "estoppel cannot be used to prevent a party from challenging an illegal act." *Alvarez Family Trust v. Ass'n of Apartment Owners of Kaanapali Alii,* 121 Hawai'i 474, 510, 221 P.3d 452, 488 (2009) (Acoba, J., dissenting in

part, joined by Duffy, J.). Because estoppel cannot " 'legalize or vitalize that which the law declares unlawful and void,' " Geraldine cannot be estopped from challenging whether the underlying judgment was void. *Id.* at 511, 221 P.3d at 489 (quoting *Godoy v. Hawai'i County,* 44 Haw. 312, 324, 354 P.2d 78, 84 (1960)).

HRS § 580–1 [6] (2006 Repl.), the court has subject matter jurisdiction over the "matters" of divorce.

> *Exclusive original jurisdiction in matters* of annulment, *divorce,* and separation, ... is conferred upon the family court of the circuit in which *the applicant has been domiciled or has been physically present for a continuous period for at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause* unless either party to the marriage *has been domiciled or has been physically present in the State for a continuous period of at least six months* next preceding the application therefor.

(Emphases added.) Subject matter jurisdiction and "access to courts for divorce [are] governed by the first sentence of § 580–1[.]" *Whitehead v. Whitehead,* 53 Haw. 302, 315, 492 P.2d 939, 946 (1972). Thus, the family court has jurisdiction over a divorce complaint when "the applicant has been domiciled or has been physically present for a continuous period of [ ] three months" before the filing of the complaint.[7] HRS § 580–1.

The second sentence provides a "substantive requirement" for divorce, that "satisfaction of the [domicile or] residential requirement [for six months] is a condition to the *granting* of divorce by the court which has heard the case, not a condition which deprives a divorce applicant of a forum in which his case may be heard." *Whitehead,* 53 Haw. at 315, 492 P.2d at 947 (emphasis added).

Thus, "as long as [the applicant] was domiciled in Hawai'i [in the circuit embracing the family court] at the time she filed for divorce, i.e., she was physically present in Hawai'i with the intention of remaining indefinitely, the family court ha[s] subject matter jurisdic-

tion to entertain the action." *Puckett,* 94 Hawai'i at 483, 16 P.3d at 888. Geraldine was domiciled in Hawai'i, on Oahu, at the time she filed the complaint. Accordingly, the family court had subject matter jurisdiction over her divorce complaint against George.

### B.

Subject matter jurisdiction over the complaint itself must not be confused with the elements of a successful complaint for divorce. *Whitehead* explains that a party alleging a Hawai'i domicile or continuous presence for three months who files a divorce complaint establishes the family court's subject matter jurisdiction; to succeed on that complaint, however, a party must show the existence of domicile or continuous presence in Hawai'i for the necessary six-month period of time, the marriage relationship, and a ground for divorce:

> An applicant for divorce who fails to prove a ground for divorce will not be granted a divorce because of failure to satisfy a substantive requirement for divorce. Similarly, an applicant who fails to prove that he has been domiciled or has been physically present in this State for [six months as set forth by statute] will not be able to obtain a divorce because of failure to satisfy a substnative [sic] requirement, not because he is denied access to court.

*Whitehead,* 53 Haw. at 315–16, 492 P.2d at 947.

Based on the foregoing, then, to be "granted" a divorce, the applicant must show (1) the parties were married; (2) domicile or continuous presence for six months in Hawai'i; and (3) one of four situations outlined

---

**6.** It is noted that HRS § 580–1 was amended in February 2011 and, in addition to the quoted language, states that "[t]he family court of each circuit shall have jurisdiction over all proceedings relating to the annulment, divorce, and separation of civil unions entered into in this State in the same manner as marriages." Act 1 (Feb. 24, 2011).

**7.** It need not be addressed whether the three-month period applies to domicile and continuous presence, or continuous presence alone. *Puckett v. Puckett,* 94 Hawai'i 471, 16 P.3d 876 (App.

2000), suggests that the three-month period of continuous presence does not apply for purposes of jurisdiction. With respect to proving domicile or continuous presence for six months, "[i]t is clear then that the durational six-month period applies to both domicile and physical presence." *Id.* at 482 n. 12, 16 P.3d at 887 n. 12; *see also Whitehead,* 53 Haw. at 304, 492 P.2d at 941 (noting that the "first sentence of § 580–1 contains a durational requirement involving domicile or physical presence").

by HRS § 580–41 (2006 Repl.) applied. Geraldine's divorce complaint alleged that the marriage was irretrievably broken, one of four grounds under HRS § 580–41 that may support a complaint for divorce. Upon proof of one of the four grounds, the court "shall decree a divorce from the bond of matrimony upon the application of either party[.]" *Id.*

Here, a marriage is an element that must be proven to successfully obtain a divorce; it is not a jurisdictional prerequisite for the family court to entertain a divorce complaint under HRS §§ 580–1 and –41.[8] Thus, whether a marriage was validly formed would be an issue to be decided in an action for a divorce. The validity of a marriage, however, is not a ground for divesting the court of jurisdiction to entertain the complaint.

### IV.

If the judgment is not void under HFCR Rule 60(b)(4), Geraldine argues that the court should have set aside the property division portion of the divorce decree under HFCR Rule 60(b)(6) because George (1) had committed fraud on the court, and/or (2) had exercised undue influence in obtaining the property division via the marital agreements.

*See supra* note 2. To be successful in bringing a HFCR Rule 60(b)(6) motion, the movant must show that "(1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time."[9] *Hayashi,* 4 Haw.App. at 290, 666 P.2d at 174. HFCR Rule 60(b)(6) permits the court in its sound discretion to relieve a party from a final judgment.

### V.

Geraldine argued that George committed fraud on the court "by concealing the fact that he had never divorced Sylvie [ ], thereby claiming a status and identity (i.e., a married man) to gain access to [the] court so he could use it as a device to improperly obtain [Geraldine's] assets." The court determined that Geraldine's claim "sound[s] in fraud or other intentional misconduct," and therefore was barred by the one year limitation under HFCR Rule 60(b)(3). Similarly, the ICA concluded that Geraldine's assertion of fraud on the court fell within the general category of "fraud" under HFCR Rule 60(b)(3), *Cvitanovich–Dubie v. Dubie,* 123 Hawai'i 266, 282, 231 P.3d 983, 999 (App.2010), because HFCR Rule 60(b)(3) does not specify "upon whom

---

8. Geraldine relies on *Tagupa v. Tagupa,* 108 Hawai'i 459, 465, 121 P.3d 924, 930 (App.2005), for the proposition that the family court lacks subject matter jurisdiction over a divorce complaint when one party was allegedly involved in simultaneous marriages. *Tagupa* involved competing actions for divorce and annulment, the latter based on the assertion that the spouse had been married to two men at the same time. Although the family court granted the divorce, the ICA vacated the divorce decree and remanded for a partial new trial to determine whether the annulment claim was viable. *Id.* at 466–67, 121 P.3d at 931–32. Since the ICA remanded to the family court for further proceedings, the allegation of bigamy did not divest the family court of jurisdiction, contrary to Geraldine's assertion.

 Geraldine also relies on *State v. Alagao,* 77 Hawai'i 260, 883 P.2d 682 (App.1994), and *State v. Miyahira,* 98 Hawai'i 287, 47 P.3d 754 (App.2002). *Alagao* involved a statute providing the family court with jurisdiction to "try any offense committed against a child by ... *any other person* having the child's *legal or physical custody* [,]" 77 Hawai'i at 263, 883 P.2d at 685 (emphases added), and *Miyahira* involved a statute providing the family court with jurisdiction to "try

any adult charged with an offense, ... against the person of the defendant's *husband or wife* [,]" 98 Hawai'i at 291, 47 P.3d at 758 (emphasis added). Determining, respectively, whether the defendant had legal or physical custody of the child, or whether the defendant was married at the time of the offense, were subject matter jurisdictional questions of fact because they were requirements that had to be met under those statutes before the court exercised its jurisdiction. *Alagao,* 77 Hawai'i at 264, 883 P.2d at 686; *Miyahira,* 98 Hawai'i at 293, 47 P.3d at 760. Insofar as *Alagao* and *Miyahira* may be correct as to "jurisdictional questions of fact" regarding the respective statutes, the statutes at issue here, HRS § 580–1 and HRS § 580–41, contain no requirement that a valid marriage is a jurisdictional prerequisite.

9. Nancy did not argue, in her Answering Brief or in her Response to the Application, that even if HFCR Rule 60(b)(6) applied, the motion was not brought within a reasonable time. Accordingly, the issue of whether Geraldine's motion was brought within a reasonable time was waived. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

the adverse party must have committed the fraud, misrepresentation, or other misconduct[,]" *id.* Respectfully, for the reasons that follow, the court and the ICA were wrong.

### A.

This court has not definitively addressed the issue of whether fraud on the court is a category of "fraud" under HFCR Rule 60(b)(3), or whether it is distinct from that subsection and falls under "any other reason" justifying relief and therefore may be brought by motion under Rule 60(b)(6). Rule 60(b)(3) has been cited with respect to claims that were brought by a party pursuant to Rule 60(b)(3) and not contested under that subsection. *See Kawamata Farms, Inc., v. United Agri Prods.*, 86 Hawai'i 214, 257, 948 P.2d 1055, 1098 (1997) (concluding that an "unusual, unique example of unprecedented discovery *fraud [was] perpetrated against the court* [,]" (emphasis added), and addressing the claim under HRCP Rule 60(b)(3)); *see also Moyle v. Y & Y Hyup Shin, Corp.*, 118 Hawai'i 385, 402 n. 13 & 403, 191 P.3d 1062, 1079 n. 13 & 1080 (2008) (noting that the plaintiff's allegations, brought under HRCP Rule 60(b)(3), that the appellees committed perjury and fraud on the court while giving testimony, failed to establish such fraud under HRCP Rule 60(b)(3)). In *Kawamata Farms* and *Moyle*, the motions claiming fraud on the court were timely brought under subsection 3. Accordingly, this court did not address whether a Rule 60(b)(3) or a Rule 60(b)(6) motion was the proper vehicle. *Kawamata Farms*, 86 Hawai'i at 229, 948 P.2d at 1070 (HRCP Rule 60(b)(3) motion was filed seven months after the jury verdict); *Moyle*, 118 Hawai'i at 390 & 402 n. 13, 191 P.3d at 1067 & 1079 n. 13 (HRCP Rule 60(b)(3) motion to set aside the judgment based on fraud on the court was filed ten days after judgment was entered). *Cf.* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2864, at 355 (1995) [hereinafter Wright, Miller & Kane] (noting that in cases where the motion is made within a year of judgment, "it is not important to decide whether the motion in fact comes under clause (6) or under one of the earlier clauses[,]" because "[t]hese prompt motions for relief are granted if the court thinks that justice requires it and denied if the court feels otherwise").

It should also be noted that this court has held, in *Child Support Enforcement Agency v. Doe*, 98 Hawai'i 499, 51 P.3d 366 (2002) [hereinafter *CSEA* ],[10] that a Rule 60(b)(3) motion alleging fraud cannot be construed as a Rule 60(b)(6) motion also alleging fraud. *CSEA* only stands for the proposition that a motion alleging fraud and styled as 60(b)(3) cannot be construed by the court as one under 60(b)(6) because the subsections are mutually exclusive. Therefore, *CSEA* does not shed light on the issue.

### B.

Inasmuch as HFCR Rule 60(b) and Federal Rules of Civil Procedure (FRCP) Rule 60(b) "are almost identically worded, interpretations of FRCP Rule 60(b) are helpful in

10. In *CSEA*, in a family court proceeding to establish paternity of a child whose father (Father) had died before the child's birth, pursuant to an agreement by all parties, including Grandmother, the special administrator of Father's estate, the family court ordered genetic testing. 98 Hawai'i at 500, 51 P.3d at 367. Subsequently, Father was identified as the child's biological father, and Grandmother no longer contested paternity. *Id.* at 501, 51 P.3d at 368. The family court entered judgment in December 1997, stating that Father was the child's biological father. *Id.*

In October 1999, Grandmother moved to set aside the judgment under HFCR 60(b)(2) and (3) on the ground that there was "newly discovered evidence" showing that no genetic testing of Father existed, and that "CSEA had lied" to induce her "to agree to the judgment of paternity." *Id.* at 502, 51 P.3d at 369. The family court denied the motion, and on appeal, the ICA construed Grandmother's motion as one brought under 60(b)(6) and reached the merits of her claims. *Id.* This court held that the ICA erred in construing the motion as one brought under subsection 6, concluding that because "Grandmother's asserted grounds for relief unmistakably were based on circumstances specified in one or more of clauses (1) through (5) of HFCR Rule 60(b), Grandmother's motion cannot, as a matter of law, be construed as a HFCR Rule 60(b)(6) motion." *Id.* at 504, 51 P.3d at 371.

this case."[11] *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 431, 32 P.3d 52, 75 (2001). A few jurisdictions have noted the term fraud, found in subsection 3, is general enough to encompass fraud on the court. *United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir.2002) ("We hold that a claim of fraud, including fraud upon the court, cannot be brought under clause (b)(6)."); *see Rease v. AT & T Corp.*, 358 Fed.Appx. 73, 76 (11th Cir.2009) (noting that the plaintiff "cannot rely on Rule 60(b)(6) to obtain relief on grounds that [the defendant] and its attorneys perpetrated a fraud on the court ..., because a court considers claims premised on fraud ... under Rule 60(b)(3)"). It appears that these courts hold the view that "the Rule suggests that equitable considerations prevail in such cases [of fraud] for one year, and that the interest in finality of judgments prevails thereafter." *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1355 (4th Cir.1982).

### C.

On the other hand, many courts hold that fraud on the court can be brought by motion under subsection 6. "A [FRCP] Rule 60(b)(6) motion is an appropriate vehicle to bring forward a claim for fraud on the court[.]" *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009); *see United States v. 6 Fox St.*, 480 F.3d 38, 46 (1st Cir.2007) (recognizing that subsection 6 "embraces what is called 'fraud on the court' "); *see also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir.2006) (noting that, "[a]cts of 'fraud on the court' can sometimes constitute extraordinary circumstances meriting relief under Rule 60(b)(6)[ ]"); *Metlyn Realty Corp. v.*

*Esmark, Inc.*, 763 F.2d 826, 832 (7th Cir. 1985) ("Unless the false testimony can be traced to the adverse party, the case must be decided under the residual category of 60(b)(6), which permits review only when the violation created a substantial danger of an unjust result."); *R.C. v. Nachman*, 969 F.Supp. 682, 690 (M.D.Ala.1997), *aff'd*, 145 F.3d 363 (11th Cir.1998) (determining that fraud on the court can be a reason justifying relief under 60(b)(6)); *Trim v. Trim*, 33 So.3d 471, 475 (Miss.2010) ("Rule 60(b)(6) provides a 'catch-all' provision under which relief may be granted in exceptional and compelling circumstances, such as for fraud upon the court."); *Coulson v. Coulson*, 5 Ohio St.3d 12, 448 N.E.2d 809, 811–12 (1983) (concluding that the contention that fraud on the court falls under subsection 3 is "without merit[ ]").

Under these cases, fraud on the court is not "mere" fraud. These courts appear to reason that because fraud on the court affects the judicial process itself, such a claim should be brought to the attention of the court by motion under 60(b)(6), and not be subject to a one-year limitation. *See Trim*, 33 So.3d at 478 (concluding that a party's intentional filing of a substantially false statement providing inaccurate financial information in a divorce proceeding constitutes fraud on the court, which could be addressed under subsection 6).

### VI.

Fraud on the court should fall under HFCR Rule 60(b)(6) as "any other reason" justifying relief, and not be subject to a one-year limitation of subsection 3 because (1)

---

**11.** It must be noted that FRCP Rule 60(b) was amended in 2007 and the language in 60(b)(6) that relief could be sought by motion or independent action was deleted and relocated to section 60(d). The Commentary to the amendment explains that "the final sentence of the rule said that the procedure for obtaining any relief from a judgment by motion as prescribed in the Civil Rules or by an independent action[was] deleted as unnecessary." 2007 Commentary to FRCP Rule 60(b). Relief "continues to be available only as provided in the Civil Rules or by Independent Action." *Id.* The amendment added FRCP Rule 60(d), which provides, in pertinent part, that "[t]his rule does not limit a court's

power to (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; ... [or] (3) set aside a judgment for fraud on the court." FRCP Rule 60(d)(1) and (3). The commentary states that the "changes are intended to be stylistic only." 2007 Commentary to FRCP Rule 60(b). Therefore, Rule 60(d)(3) "contains the 'fraud on the court' provision that was part of the penultimate sentence of Rule 60(b) before its 2007 revision. The change was stylistic only, ... and thus, interpretations of the prior 'fraud upon the court' language apply equally to the new Rule 60(d)(3)." *Williams v. Dormire*, No. 4:10–CV–1660–CAS, 2010 WL 3733862, at *2 n. 3 (E.D.Mo. Sept.20, 2010).

Rule 60(b) itself suggests that conclusion; (2) our policies of reaching the merits and according justice would be promoted; and (3) statements in our case law support such an outcome.

### A.

HFCR Rule 60(b)(3) states that "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct *of an adverse party* " justifies relief. (Emphasis added.) Thus, HFCR Rule 60(b)(3) "concerns misconduct by an opposing party only." *Chang v. Rockridge Manor Condominium,* No. C–07–4005 EMC, 2010 WL 3063185, at *3 (N.D.Cal. Aug.3, 2010); *see Sherman v. Verizon Va., Inc.,* 220 F.R.D. 260, 262 (E.D.Va.2002) (deciding that to bring a subsection 3 motion, the alleged wrongful action must be committed by an opposing party, not by the plaintiff's attorney); *see also CSEA,* 98 Hawai'i at 504, 51 P.3d at 371 (noting that alleged fraud committed by the adverse party's counsel fell under subsection 3).

The considerations underlying fraud on the court, however, are *not* restricted to the conduct of an opposing party as expressly qualified under HFCR Rule 60(b)(3) and, therefore, should not fall under that subsection. Fraud on the court may be committed by a party, but also may be committed by the party's counsel.[12] It constitutes "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."

*Kawamata Farms,* 86 Hawai'i at 256, 948 P.2d at 1097 (internal quotation marks and citation omitted) (observing that discovery fraud by one party was perpetuated against the court and abused the judicial process). It is a "direct assault on the integrity of the judicial process." *Schefke,* 96 Hawai'i at 431, 32 P.3d at 75 (internal quotation marks and citation omitted); *see In re Genesys Data Techs.,* 204 F.3d 124, 130 (4th Cir.2000) (noting, in the context of an assertion that the submission of a false affidavit constituted a fraud on the court, that a fraud on the court "seriously affects the integrity of the normal processes of adjudication") (internal quotation marks and citation omitted). Since fraud on the court affects the judicial process itself, the ability to bring it to a court's attention should not be restricted by the one-year limitation in HFCR Rule 60(b)(3).

If a party in a divorce or marriage proceeding misrepresents to the court the status of his or her marriage to obtain a favorable decree, a fraud on the court may be committed. *See Batrouny v. Batrouny,* 13 Va.App. 441, 412 S.E.2d 721, 723 (1991) (noting that a wife committed fraud on the court when, in a divorce proceeding, she represented to the court that one child was one of two children born out of the parties' marriage, and the court relied on that representation in ordering the husband to make child support payments; sixteen months after the divorce, the husband moved to vacate the decree and, upon an evidentiary hearing, the evidence showed, and the wife admitted, that the hus-

---

12. *Schefke,* 96 Hawai'i at 431, 32 P.3d at 75 ("Courts have required more than nondisclosure by a *party or the party's attorney* to find fraud on the court.") (Emphasis added.); *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002) (noting that fraud on the court occurs when a "party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action[ ]"). Fraud on the court would also include fraud committed by a judge or by counsel. *See Herring v. United States,* 424 F.3d 384, 386 (3d Cir.2005) (stating that intentional fraud by an officer of the court can amount to fraud on the court); *Pumphrey v. K.W. Thompson Tool Co.,* 62 F.3d 1128, 1130 (9th Cir.1995) ("One species of fraud upon the court occurs when an 'officer of the court' perpetrates fraud affecting the ability of the court or

jury to impartially judge a case."); *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir.1993) (concluding that intentional fraud by an officer of the court amounts to fraud on the court); *McKinney v. Boyle,* 404 F.2d 632, 633–34 (9th Cir.1968) (holding that the plaintiff's motion fell under subsection 6 when the plaintiff alleged that his lawyer and his former wife, neither a party to the case, committed fraud); *Chewning v. Ford Motor Co.,* 354 S.C. 72, 579 S.E.2d 605, 611 (2003) (noting that when an attorney—an officer of the court—suborns perjury or intentionally conceals documents, he or she has been held to commit fraud on the court); *cf. Mt. Ivy Press, LP v. Defonseca,* 78 Mass.App.Ct. 340, 937 N.E.2d 501, 509–10 (2010) (*pro se* litigants, generally required to comply with the same rules as attorneys, can be held to commit fraud on the court).

band was not the father). In her declaration, Geraldine stated that George intentionally misrepresented his marital status in order to obtain a divorce decree and property settlement agreements favorable to him. The property settlement agreements were allegedly agreed to by Geraldine on the understanding that George was married only to her. Therefore, in issuing its decree, the court fundamentally relied on George's representation that he was married to one woman.

This was not a case where the fraud occurred between the parties and had little effect on the judicial proceedings. *See Maranda v. Maranda,* 449 N.W.2d 158, 165 (Minn.1989) (noting that the court in a stipulated divorce dissolution sits as a third party to the agreement). George's alleged representations resulted in an abuse of the judicial process because the fraud affected an integral part of the court's decision to grant the George–Geraldine divorce. Such "fraud," then, would fall within the category of "any other reason" that justifies relief under HFCR Rule 60(b)(6).

### B.

Our policies of reaching the merits and according justice also support the conclusion that fraud on the court falls under HFCR Rule 60(b)(6). While other courts conclude that the policy favoring finality of judgments prevails over equitable considerations a year after judgment, *Great Coastal Express,* 675 F.2d at 1355, this court has expressed a policy "preference for judgments on the merits over the finality of judgments, especially when such judgments are procured through fraud[,]" *Matsuura v. E.I. Du Pont de Nemours & Co.,* 102 Hawai'i 149, 158, 73 P.3d 687, 696 (2003). Indeed, "a judgment or final order should reflect the true merits of the case." *Id.* at 157, 73 P.3d at 695 (internal quotation marks and citation omitted). Hence, "the injurious effect of fraud" on the

ability to ascertain the truth weighs in favor of reaching the merits of a fraud on the court claim. *Id.* at 162, 73 P.3d at 700.

In *Magoon v. Magoon,* 70 Haw. 605, 609, 780 P.2d 80, 82 (1989), the family court entered an order on April 15, 1988, dividing the property between a couple who had divorced on March 4, 1987. After an appeal was filed, a document explaining an agreement between the parties regarding the distribution of property was discovered. A motion to vacate the order distributing the property was filed in the family court, as the late discovery of the document and the commission of fraud by the ex-wife furnished grounds for relief under HFCR Rule 60(b). *Id.* at 610, 780 P.2d at 83.

The family court noted "there were sufficient questions raised by the discovery of this document to have required or conducted a further fact finding hearing to determine the validity of the document[,]" but concluded, based on its interpretation of HRS § 580-56(d) (1976) [13] and case law, that it lacked jurisdiction to entertain the motion because more than a year had elapsed since the decree of divorce was entered. *Id.* (internal quotation marks omitted). In explaining that the family court had jurisdiction, this court noted, "Our concern that a judgment or final order should reflect the true merits of the case, which is expressed in HFCR 60(a) and (b), militates against a literal application of the one-year limitation here." *Id.* at 616, 780 P.2d at 86. As the family court had jurisdiction over the "Rule 60(b) motion seeking relief from the order dividing the property despite the elapse of a year[,]" this court vacated the order denying the motion and remanded to the court with instructions, *inter alia,* to hold a hearing to determine the validity of the agreement. *Id.* at 616, 780 P.2d at 87.

### C.

Finally, our cases have suggested that fraud on the court is not barred by a one-

---

**13.** HRS § 580-56(d) (1993) is the same as the 1976 version, and provides:

Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of

a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.

year limitation under HFCR Rule 60(b)(3). It has been stated that other "courts place no time limit on setting aside a judgment on th[e] ground" of fraud on the court, supporting the view that fraud on the court can be brought under subsection 6, as there is no specific time limitation under that subsection. *Schefke*, 96 Hawai'i at 431 n. 42, 32 P.3d at 75 n. 42 ("A court's power to vacate a judgment for fraud on the court is great, and has few procedural limitations. . . . For example, courts place no time limit on setting aside a judgment on this ground[.]"); *see Magoon*, 70 Haw. at 616, 780 P.2d at 86 (noting that the court had "inherent power to investigate whether a judgment was obtained by fraud[,]" which supported the conclusion that the trial court had jurisdiction to entertain a 60(b) motion alleging fraud) (internal quotation marks, citations, and ellipsis omitted); *Farrow v. Dynasty Metal Sys., Inc.*, 89 Hawai'i 310, 313, 972 P.2d 725, 728 (App.1999) ("A judgment may be set aside at any time for after-discovered fraud upon the court."); *Southwest Slopes, Inc. v. Lum*, 81 Hawai'i 501, 511, 918 P.2d 1157, 1167 (App.1996) (noting that "[f]raud, misrepresentation, and circumvention used to obtain a judgment are generally regarded as sufficient cause for the opening or vacating of the judgment[,]" without stating that a motion seeking such relief must be brought within a certain time) (internal quotation marks and citation omitted); *see also In re Genesys Data Techs.*, 204 F.3d at 130 (noting that "under Hawai'i law, as under federal law, a judgment may be attacked for 'fraud upon the court' at any time") (citation omitted).

### D.

Accordingly, based on the language of HFCR Rule 60(b), our policy of reaching the merits of claims and rendering justice, and case law indicating that fraud on the court can be brought at any time, Geraldine's claim

of fraud on the court should be remanded for decision under HFCR Rule 60(b)(6).

### VII.

Geraldine also sought relief from the judgment under HFCR Rule 60(b)(6) on the ground that George exercised undue influence over her and caused her to transfer property to him that became incorporated in the divorce decree. She argued that the property division under the divorce decree was inequitable and that George was an "exceptionally effective manipulator[.]"

### A.

According to Geraldine, undue influence is not "specifically stated" in subsections 1 through 5, and, therefore, that claim falls under HFCR Rule 60(b)(6). George countered that "it is abundantly clear that the nature of [Geraldine's] claim, as determined from the allegations set forth in her Motion, are in the nature of a fraud claim." The ICA determined that "a plain reading of HFCR Rule 60(b) reveals that 'undue influence' falls within Rule 60(b)(3) as 'other misconduct.'" *Dubie*, 123 Hawai'i at 282, 231 P.3d at 999.

With all due respect, a "plain reading" of HFCR Rule 60(b)(3) does not provide such an indication. "[O]ther misconduct" is not defined in HFCR Rule 60(b). It does not follow, then, that undue influence, mentioned nowhere in 60(b)(3), indisputably falls under "other misconduct" by one party against the other.[14] In my view, the construction of the words "other misconduct" is subject to the rule of ejusdem generis. "The doctrine of ejusdem generis states that where general words follow specific words in a statute, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Singleton v. Liquor Comm'n*, 111 Hawai'i 234, 243 n. 14, 140 P.3d 1014, 1023 n. 14 (2006) (internal quotation marks and citations omitted).[15] Here, "other misconduct" is

---

14. Some courts have held that undue influence falls under 60(b)(6). *Espie v. Catholic Soc. Servs.*, 528 So.2d 863, 864 (Ala.Civ.App.1988) (concluding that the plaintiff failed to show she was under undue influence to entitle her to relief under Alabama Rules of Civil Procedure Rule 60(b)(6)); *see Adams v. Marshall*, No. 4:05–cv–62, 2007 WL 3102099, at *1 (W.D.Mich. Oct.22,

2007) (construing the claim that undue influence was exerted to procure a settlement was a claim seeking relief under subsections 3 and 6).

15. HFCR 60(b) has the same force and effect as a statute, thus rules of statutory construction apply to it. "When interpreting rules promulgated by the court, principles of statutory construction

a general term, following the specific terms of fraud and misrepresentation. "Other misconduct," then, only embraces types of misconduct similar to fraud and misrepresentation.

### 1.

A plaintiff alleging fraud must establish the following elements:

(1) *false representations were made by defendants,* (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.

*Shoppe v. Gucci Am., Inc.,* 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (emphasis added) (internal quotation marks and citations omitted). The false representation must concern a "past or existing material fact" but cannot be based on promises or "statements which are promissory in their nature." *Id.*

Misrepresentation has been defined as:

Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. *An incorrect or false representation.* That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists.

*Kim v. Contractors License Bd.,* 88 Hawai'i 264, 268, 965 P.2d 806, 810 (1998) (emphasis added) (brackets and citation omitted); *see Blair v. Ing,* 95 Hawai'i 247, 269, 21 P.3d 452, 474 (2001) (noting that negligent misrepresentation requires "false information be supplied"); *see also Black's Law Dictionary* at 1091 (defining misrepresentation as "[t]he act of making a false or misleading assertion about something, usually with the intent to deceive" or "an assertion that does not accord with the facts"). Consequently, one element of misrepresentation is that false representations were made. *See Ass'n of Apartment Owners of Newtown Meadows v. Venture 15,* 115 Hawai'i 232, 263, 167 P.3d 225, 256 (2007) (requiring that "false infor-

mation be supplied") (internal quotations marks and citation omitted). Thus, fraud and misrepresentation have in common, false representations. Under the foregoing, then, "other misconduct" would involve a false representation.

### 2.

Contrastingly, undue influence is premised upon the victim's will being overborne, which can be accomplished without any false representation. It is stated generally that the elements of undue influence are "(1) a susceptible party, (2) another's opportunity to influence the susceptible party, (3) the actual or attempted imposition of improper influence, and (4) a result showing the effect of the improper influence." *DiPietro v. DiPietro,* 10 Ohio App.3d 44, 460 N.E.2d 657, 662 (1983); *see also Pickman v. Pickman,* 6 Conn.App. 271, 505 A.2d 4, 7 (1986) (explaining the four elements as "(1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence").

Undue influence is defined as "[t]he improper use of power or trust in a way that deprives a person of free will and substitutes another's objective." *Black's Law Dictionary* at 1665. The ICA has defined it as "the misuse of a position of confidence or the taking advantage of a person's weakness, infirmity or distress to change improperly that person's actions or decisions." *In re Adoption of Male Minor Child,* 1 Haw.App. 364, 370, 619 P.2d 1092, 1097 (1980) (internal quotation marks and citation omitted). While "[i]t is impossible to define or describe with precision and exactness what is undue influence[,]" it matters that "the quality and the extent of the power of one mind over another must be to make it undue[.]" *In re Notley's Will,* 15 Haw. 435, 472 (Haw. Terr.1904) (Galbraith, J., dissenting); *see Odorizzi v. Bloomfield Sch. Dist.,* 246 Cal. App.2d 123, 54 Cal.Rptr. 533, 539 (1966) (explaining that undue influence is "coercive in nature, persuasion which overcomes the will without convincing the judgment"). Thus, false representations, or "[m]isrepresenta-

apply." *State v. Lau,* 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995) (citation omitted).

tions of law or fact[,] are not essential" to a showing of undue influence, for a person's will may be overborne without false representation. *Id.*

Hence, while undue influence involves domination of a person and "overcoming a person's free agency or free will so that the person is unable to keep from doing what he or she would not otherwise have done[,]" fraud and misrepresentation involve an inducement of "a person to exercise his or her free will mistakenly based on false information." *Rawlings v. John Hancock Mut. Life Ins.,* 78 S.W.3d 291, 301 (Tenn.Ct.App.2001); *see In re Estate of Vick,* 557 So.2d 760, 767 (Miss.1989) (noting that the "basic ingredient" of fraud is that the victim is "deceived through the use of false information, so that his free will or free agency, of which he is not deprived, is exercised upon the basis of false information"). Though "the similarity between fraud and undue influence has often been pointed out, there is a very clear cut difference between the two concepts":

> Undue influence consists in exerting sufficient pressure or influence upon the testator to break down his will power and overcome his free agency or free will so that he is unable to keep from doing that which he would not otherwise do. *Such undue influence need not involve the use of false and fraudulent representations or untrue statements. Unrelenting importunity that employs the use of perfectly true and accurate information may become so overbearing as to constitute undue influence, though such could not by any means constitute fraud.*

*Id.* (emphasis added) (citation omitted). Thus, "[t]here need be no pressure in fraud such as is necessary to constitute undue influence." *In re Estate of Hayes,* 658 S.W.2d 956, 959 (Mo.Ct.App.1983).

These distinctions support the conclusion that undue influence does not fall under "any other misconduct" in HFCR Rule 60(b)(3) because undue influence is based on conduct that is different from fraud and misrepresentation. As noted before, fraud or misrepresentation exists when a person relies on a false belief, whereas undue influence exists when a person's will is overborne and the

person does something he or she would not do otherwise. Because of the differences between fraud and misrepresentation on one hand, and undue influence on the other, undue influence cannot be a type of "other misconduct" under HFCR Rule 60(b)(3) and, therefore, must fall under HFCR Rule 60(b)(6).

**B.**

Geraldine sought to set aside the property division of the divorce decree due to George's exertion of undue influence over her from the date of marriage until the date of his death. The four elements of undue influence—a susceptible party, another's opportunity to influence, the actual imposition, and the resulting showing of improper influence—were alleged in the motion and supported by evidence in this case. *See Pickman,* 505 A.2d at 7 (listing the elements); *DiPietro,* 460 N.E.2d at 662.

As to the first element, susceptibility, a court considers whether the person alleged to be the object of undue influence was susceptible to such influence. Dr. Bennett Blum (Dr. Blum), a forensic psychiatrist who has "extensive experience as a forensic psychiatrist in evaluating situations in which one person may have exerted undue influence on another[,]" declared that Geraldine "was susceptible to manipulation and undue influence" at the time she met George. According to Dr. Blum, she was "made to believe that certain actions were critical to [George's] health" and their "happiness as a couple[,]" considerations that "overwhelmed" her. Therefore, there was evidence that Geraldine was susceptible to undue influence.

As to the second element, when a "confidential relationship exists where the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust," an opportunity to influence exists. *Mente Chevrolet Oldsmobile Inc. v. GMAC,* 728 F.Supp.2d 662, 672 n. 25 (E.D.Pa.2010) (internal quotation marks and citation omitted); *see Francois v. Francois,* 599 F.2d 1286, 1292 (3d. Cir.1979) (noting that a confidential relationship "arises when one party

places confidence in the other with a resulting superiority and influence on the other side"). Such a relationship typically includes that of "husband a[nd] wife[.]" *GMAC*, 728 F.Supp.2d at 672 n. 25.

In this case, Geraldine put her confidence and trust in George, declaring that she "believed[,]" "relied" on, and "trust[ed]" him, and obtained a "temporary" divorce based on his representations that the divorce was for business reasons and that they would soon remarry. Dr. Blum expressed to a reasonable degree of medical probability as a psychiatrist, that George "introduced a new element for [Geraldine's] consideration in her behaviors—the supposed spiritual and associated physical impact of her decisions upon the health and well-being of people she loved, her friends, and herself." George had the opportunity to "misuse" his "position of confidence" and take advantage of Geraldine. *In re Adoption of Male Minor Child*, 1 Haw. App. at 370–71, 619 P.2d at 1097. Based on their marital ties and Geraldine's "trust" in him, *GMAC*, 728 F.Supp.2d at 672 n. 25, George was allegedly able to exploit their relationship in order to obtain her assets, according to Geraldine. Under George's influence, as related by Dr. Blum, Geraldine ignored and disregarded "input from legal advisors or accountants," thus raising questions as to "whether [she] had independent or disinterested advice in the transaction[s,]" a consideration as to whether undue influence was exerted. *Pickman*, 505 A.2d at 7.

As to the third element, a disposition to exert undue influence, Geraldine stated in her 60(b) motion that "[u]nbeknownst to [her], from the beginning of [her relationship with George], [George] intended to obtain her property and money[.]" She declared that he had spent more time in Thailand allegedly investing in property that he represented "belonged equally to both of [them]" and that she had an "ownership interest" in the property. He supposedly told Geraldine that a divorce would be temporary, and was for business reasons, so they should "continue to live as [they] had throughout [the] marriage." It can be "inferred" from the circumstances that George was disposed to seek a divorce and marital settlements for

his ultimate "plan to obtain [Geraldine's] assets."

Finally, as to the fourth element, a result indicating undue influence, the result was a "temporary" divorce and the transfer of money and property to George which were incorporated in the allegedly temporary divorce. As to the transfer of money and property, when one party turns over "the management of [her] finances to [the other] who subsequently used [his] position to gain control incrementally over most of [her] assets[,]" evidence of undue influence may exist. *Francois*, 599 F.2d at 1292. In her declaration, Geraldine stated that George caused her to transfer "real property, personal property and other things of value" to him. She explained that, "[b]ut for [George's] manipulations of [her], ... and other tactics employed by [George], ... [she] would not have agreed to these transfers [of money and property]."

Furthermore, Dr. Blum stated that, "in order to benefit himself[,]" George had engaged in tactics "commonly employed by cult leaders, scam artists, and perpetrators of undue influence." Such matters would support the allegations that Geraldine's complaint for divorce and transfer of money and property to George was the direct result of George's imposition of undue influence. In sum, based on the declarations in the record, it appears that George allegedly substituted his objectives for Geraldine's, "taking advantage of" her, *In re Adoption of Male Minor Child*, 1 Haw.App. at 370, 619 P.2d at 1097, and making her "do something other than [what she] would do under normal control[,]" *Pickman*, 505 A.2d at 7, to wit, obtaining a sham divorce and transferring property to him under the divorce decree.

## VIII.

The declarations of Dr. Juan Suero (Dr. Suero), *see infra*, Dr. Blum, and Geraldine, and documents submitted, are sufficient bases to convene an evidentiary hearing as to whether the fraud on the court and undue influence claims were cognizable under HFCR Rule 60(b)(6). They raise issues of fact for decision. The characterization by the court, the ICA, and the majority of the

"nature" or character of Geraldine's fraud on the court and undue influence claims as "fraud" and other misconduct under HFCR Rule 60(b)(3), in the face of these declarations and documents, is wrong as a matter of law. *See Allen v. Allen,* 64 Haw. 553, 562, 645 P.2d 300, 307 (1982) (stating that "some of the[family court's] findings and conclusions were probably unfounded because no evidentiary hearing was conducted"). A conclusion of law that all of Geraldine's claims amount to fraud and "misconduct" under HFCR Rule 60(b)(3), without consideration of the evidence to the contrary at a hearing therefor, does not comport with fundamental fairness. *Cf. Sousaris v. Miller,* 92 Hawai'i 534, 542, 993 P.2d 568, 576 (App.1998) (stating that where there are no "material facts in dispute[,]" no evidentiary hearing is required). Thus, Geraldine's claims should be remanded to the court for an evidentiary hearing.

## IX.

Accordingly, I would vacate the May 3, 2010 ICA judgment and the December 18, 2007 order of the court, and remand for an evidentiary hearing and determination regarding the fraud on the court and undue influence claims, which were properly before the court under HFCR Rule 60(b)(6).

## X.

I respectfully disagree with the majority's arguments that (1) Geraldine's allegations of fraud on the court constitute only fraud under HFCR Rule 60(b)(3), (2) her claim of undue influence falls under HFCR Rule 60(b)(3), and (3) Geraldine did not request an evidentiary hearing.

### A.

The majority states that Geraldine's fraud on the court claim is unsuccessful because "the record does not establish that George knew the Dominican Decree was invalid, or that he deliberately misrepresented his marital status to the family court." Majority opinion at 145, 254 P.3d at 456, *see id.* at 145 n. 18, 254 P.3d at 456 n. 18. However, there are facts in the record to establish that George knew the decree was invalid and, thus, that he misrepresented his status to the court.

Geraldine's declaration indicates that George had knowledge of the invalidity of the Dominican divorce decree. Geraldine declared that George "made factual representations" to her, including that "he was divorced from his previous wife[.]" According to her, she realized, after George's death, that George "had not been validly divorced" from Sylvie at the time Geraldine married George, and she stated that she "would not have consented to marry" George, "had [she] known the truth" that his previous divorce was invalid.

Dr. Suero, an "attorney licensed to practice in the Dominican Republic," stated in a declaration and opinion that, within a "reasonable degree of probability within [his] sphere of [his] expertise," the Dominican divorce decree was void. Sylvie filed for divorce in the Dominican Republic on the ground of incompatibility of characters. However, Dr. Suero declared that, such divorce proceedings must be filed in the court embracing "the defendant's residence, [or] ... the plaintiff's residence." According to his declaration and opinion, Sylvie's residence of the West Indies and George's residence of California, were "not within the territorial jurisdiction" of the Dominican court, and therefore that court lacked personal and subject matter jurisdiction "to hear a divorce proceeding involving th[o]se parties[.]" Additionally, in his view, Dominican law was violated when the divorce hearing was held before the end of a mandatory fifteen-day period given to the opposing party, in this case, George, to respond to the summons. Dr. Suero recounted that the divorce decree "shall not be considered as a valid divorce by any third party" because "it is a product of violations of Dominican public policies and the Dominican Republic constitution."

Additionally, attached to Geraldine's 60(b) motion was a copy of the amended separation agreement indicating that a separation agreement was formed by Sylvie and George four months after their divorce, which referred to themselves as "Wife" and "Hus-

band." When two individuals refer to themselves as husband and wife, the fair "import" is that they are married.[16] Thus, there is evidence that George entered into an agreement in which he referred to himself as the husband of Sylvie only months after their alleged divorce. Accordingly, the record was sufficient to establish for purposes of an evidentiary hearing that George knew his divorce was invalid.

There are also facts in the record to establish that George deliberately misrepresented his marital status to the court. George filed an appearance and waiver form in which he submitted himself to the court's jurisdiction and stated that he was "permitting the [c]ourt *without opposition from me* to proceed with the ... matter[.]" (Emphasis added.) By agreeing to the divorce, George represented that he and Geraldine were "lawfully married to each other," as stated in the divorce complaint.[17] Since George had also "agreed with [Geraldine] on the matters set forth in a signed agreement incident to divorce[,]" he held himself out as being married to Geraldine. The divorce decree stated that, "[a]fter full consideration of the evidence, the [c]ourt f[ound] the material allegations of the Complaint for Divorce to be true, [and Geraldine was] entitled to a divorce from the bonds of matrimony on the grounds that the marriage [was] irretrievably broken[.]" Thus, the court relied on George's acknowledgment that he was married lawfully to Geraldine (and thus validly divorced from Sylvie) and that there was an agree-

ment with Geraldine incident to "divorce," in deciding that the marriage was to be dissolved.

Therefore, based on the foregoing matters, the record was sufficient to establish for purposes of an evidentiary hearing that George knew the Dominican decree was invalid or that he "deliberately misrepresented" his marital status to the court.[18]

## B.

The majority contends that because it was Geraldine, not George, who filed the divorce complaint, George could not have committed a fraud on the court. Majority opinion at 145 n. 18, 254 P.3d at 456 n. 18. This contention is belied by the appearance and waiver form filed by George with the court, as described *supra*. Also, Geraldine asserted, in the divorce complaint, that the parties were lawfully married to each other because according to her declaration, she had no reason to conclude otherwise. Geraldine "believed" George's "representations" that George and she had been "legally married" and that he had been previously "validly divorced." Furthermore, Dr. Blum stated in his declaration that George engaged in the "willful presentation of false information ('lying')"; and "[b]ecause of [George's] lies, [Geraldine] based decisions about him and his requests upon misleading, inadequate, and/or inaccurate information." Thus, there are facts in the record establishing that Geraldine's actions were a result of George's conduct in misleading her and the court that his divorce to

---

**16.** The majority contends it is "not uncommon" for the terms, husband and wife, to describe a divorced couple, citing a Hawai'i appellate decision. *See* majority opinion at 145 n. 18, 254 P.3d at 456 n. 18 (citing *Weinberg v. Dickson–Weinberg*, 121 Hawai'i 401, 403, 220 P.3d 264, 266 (App.2009)), vacated in non-relevant part by *Weinberg v. Dickson–Weinberg*, 123 Hawai'i 68, 229 P.3d 1133 (2010). However, it is axiomatic that the terms husband and wife, in ordinary usage, designate a couple as married, not as divorced. *See Merriam–Webster's Collegiate Dictionary* 566, 1353 (10th ed. 1993) (defining husband as a "male partner in a marriage"; and a wife as a "female partner in a marriage"). Nothing in the record supports extending nomenclature in *Weinberg* to the specific Canadian amended separation agreement of Sylvie and George. Furthermore, the ICA in *Weinberg* referred to the parties, a divorced couple, as "Wife

or Defendant" and "Husband or Plaintiff", 121 Hawai'i at 403, 220 P.3d at 266, not because it is "common" for divorced parties to refer to themselves in that manner, but because doing so provided continuity and ease of reference for that particular opinion.

**17.** The majority states that "none of George's responsive submissions to the [ ] court aver to the legality of his marriage to Geraldine[,]" and therefore it is unlikely that George committed a fraud on the court. Majority opinion at 145 n. 18, 254 P.3d at 456 n. 18. Respectfully, this statement is wrong in light of the appearance and waiver form signed by George.

**18.** Contrary to the majority's view, then, majority opinion at 145 n. 18, 254 P.3d at 456 n. 18, the record, including declarations of Geraldine and Dr. Suero, does "address" George's knowledge.

Sylvie was valid. Hence, the record amply supports the convening of an evidentiary hearing.

### C.

The majority also contends that George's "conceal[ment]" of the fact that he had never divorced Sylvie is "non-disclosure" or perjury that, standing alone, is insufficient to establish a fraud on the court. Majority opinion at 145–46, 254 P.3d at 456–57; *see id.* at 144–45, 254 P.3d at 456 (citing 12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.21[4][c] (3d ed. 2010)). Of course, we have stated that non-disclosure, *without more,* does not constitute fraud on the court. *Schefke,* 96 Hawai'i at 431, 32 P.3d at 75 ("Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court."). However, the majority fails to note that fraud on the court occurs when, in addition to the non-disclosure, there was no reason to question the party that failed to disclose information and the court relied on the non-disclosure:

> Ordinarily, perjury or nondisclosure does not constitute a fraud on the court because the adverse party has an opportunity to challenge the perjured testimony or non-disclosure. *However, if neither the adverse party nor the court has any reason to question the veracity of the witness or party offering false testimony, and if the court relies on that testimony in entering judgment, then the fraud constitutes a fraud on the court.*

*Moore's Federal Practice* ¶ 60.21[4][c] (emphasis added). The reason for this distinction is quite clear. Usually, in cases where non-disclosure did not amount to fraud on the court, the plaintiff or the party had "the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court." *In re Levander,* 180 F.3d 1114, 1120 (9th Cir.1999).

For example, if a party claims, after trial, that a witness failed to disclose information or committed perjury while testifying, courts have held that such a claim is insufficient as fraud on the court because the party had the opportunity to cross examine or impeach the witness, or otherwise bring the perjury to light during trial. *Id.* On the other hand, when the nondisclosure was not, and could not have been, an issue at trial, and a court relied on the non-disclosure when issuing its order, opinion, or judgment, then the non-disclosure "harms the integrity of the judicial process." *Id.* (internal quotation marks and citation omitted). Thus, non-disclosure and perjury constitute fraud on the court when the parties lack knowledge of it and the court relied on the non-disclosure.

*Kawamata Farms* and *Southwest Slopes* are consistent with the foregoing principle. *Kawamata Farms* involved DuPont's failure to timely disclose information to the plaintiffs in response to discovery requests. 86 Hawai'i at 229, 948 P.2d at 1070. There, DuPont invoked the work-product privilege regarding "Alta" results relating to soils other than of the plaintiff's land. *Id.* at 225, 948 P.2d at 1066. The circuit court ordered DuPont to produce all results, but after the verdict was entered, DuPont produced "Alta" documents that were supposed to have been produced under the court order, but had not been disclosed. *Id.* at 229, 948 P.2d at 1070. The *Kawamata Farms* plaintiffs filed a Rule 60(b)(3) motion to alter or amend the judgment because DuPont's assertion of the work product privilege had prejudiced them at trial. *Id.* at 230, 948 P.2d at 1070. This court noted that DuPont's untimely disclosure constituted *"fraud upon the circuit court and the other parties."* [19] *Id.* at 256, 948 P.2d at 1097 (emphasis added.) Obviously, DuPont's non-disclosure was relied on by the court for purposes of proceeding to judgment. Because it was brought within one year, the court did not consider whether Rule 60(b)(6) was the proper vehicle for the claim. *See* 11 Wright, Miller & Kane, *supra* § 2864, at 355 (stating that, in cases where the motion is made within a year of judgment, "it is not

---

**19.** The majority states that *Kawamata Farms* does not stand for the proposition that non-disclosure can amount to fraud on the court, but that fraudulent misrepresentations were involved. Majority opinion at 145 n. 19, 254 P.3d at 456 n. 19. Plainly, non-disclosure was involved, analogous to this case, inasmuch as DuPont failed to provide information ordered disclosed by the court.

important to decide whether the motion in fact comes under clause (6) or under one of the earlier clauses[,]" because "[t]hese prompt motions for relief are granted if the court thinks that justice requires it and denied if the court feels otherwise.").

In *Southwest Slopes*, the defendant, Lum, contracted with the plaintiffs, Southwest Slopes, Inc. and Robert Rice (Rice), to buy the plaintiffs' property conditioned on a due diligence period. 81 Hawai'i at 503, 918 P.2d at 1159. After the period passed, Lum attempted to terminate the contract because the plaintiffs had failed to disclose the existence of archaeological remains on the property. Robert Smith (Smith), the attorney for Southwest Slopes, responded that there had never been any archeological survey performed and Lum's right to cancel had therefore expired with the due diligence period. *Id.* at 505, 918 P.2d at 1161. The plaintiffs filed suit asserting that Lum was legally obligated to perform the contract, and the circuit court entered judgment for the plaintiffs. *Id.* at 506, 918 P.2d at 1162. Apparently in connection with the summary judgment motion, Rice submitted an affidavit stating that he was not aware of any archeological sites on the property, and Smith indi-

cated that he had never performed any archeological surveys of the property. *Id.* at 511, 918 P.2d at 1167. On appeal, the ICA noted that the plaintiffs had in fact received a report stating that there were archaeological features on the land before contracting with Lum. *Id.* at 509, 918 P.2d at 1165.

In light of Smith's and Rice's failure to disclose the archeological features to Lum, the ICA "refer[red] this possible *fraud upon the court* to the circuit court for appropriate investigation and action." *Id.* at 511, 918 P.2d at 1167 (emphasis added). "The possibility that [the p]laintiffs used fraud upon the court when obtaining [ ] summary judgment in their favor motivate[d the ICA] to vacate and remand." *Id.* Thus, in *Southwest Slopes*, the plaintiffs' non-disclosure of the archeological findings to Lum and to the circuit court constituted fraud on that court because the circuit court apparently relied on the plaintiffs' representations when issuing its decision.[20] Based on *Kawamata Farms* and *Southwest Slopes*, it is apparent that non-disclosure can amount to fraud on the court when the party and the trial court have no reason to question the representation, and the court relies on the representation when issuing its decision.[21]

**20.** The majority attempts to distinguish *Southwest Slopes* by stating that "the asserted fraud [in *Southwest Slopes*] involved a *potentially* false affidavit by a party, as well as an *apparently* false affidavit and letter by the party's attorney." Majority opinion at 146 n. 19, 254 P.3d at 457 n. 19 (emphases added). In the majority's view, because "fraud perpetuated by an officer of the court can constitute fraud on the court[,]" *Southwest Slopes* recognized the "possibility" that the plaintiffs used fraud on the court to obtain summary judgment. *Id.* The distinction that the majority attempts to make appears contrary to these cases.

First, the majority seems to state that *Southwest Slopes* involved the possibility that an attorney committed fraud on the court, which required remand. If the "possibility" that fraud on the court required remand, then clearly the "possibility" that George committed a fraud on the court should also require an evidentiary hearing. Second, the majority appears to infer that fraud on the court focused on the attorney as an "officer of the court." *Id.* If the majority believes that to be the case, then the argument that George was not an "officer of the court" would be a stronger, and an easier, means of disposing of Geraldine's fraud on the court claim than attempting to categorize her claim as one of

mere fraud. The majority cites no Hawai'i case for that proposition, and in any event, it would be wrong. *See Farrow*, 89 Hawai'i at 313–14, 972 P.2d at 728–29 (agreeing with the Minnesota Supreme Court that "where a *party* intentionally misleads or deceives the court . . ., such conduct constitutes fraud upon the court") (emphasis added); *see also Schefke*, 96 Hawai'i at 431 n. 42, 32 P.3d at 75 n. 42 ("Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court.").

**21.** The majority also notes that cases cited by Geraldine, *Kawamata Farms, Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *George P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 48 (1st Cir.1995), and *Southwest Slopes*, do not support her claim under Rule 60(b)(6). Majority opinion at 146, 254 P.3d at 457. But *Kawamata Farms, Hazel–Atlas*, and *Southwest Slopes* indicate what is considered to constitute fraud on the court. As discussed, *Kawamata Farms* involved discovery abuse, which was considered to be fraud on the court. *Hazel–Atlas*, as discussed further *infra*, involved concealment and misrepresentation to obtain a patent, which constituted fraud against a party and the court. The majority posits that *Southwest Slopes* supports the prop-

George's "non-disclosure" here, as in *Kawamata Farms* and *Southwest Slopes,* appears to have constituted a "direct assault" on the integrity of the judicial process inasmuch as the court, and Geraldine, proceeded under the assumption that George had been lawfully divorced from Sylvie, and Geraldine and George were lawfully married. In order to grant the divorce, the court had to rely on the representations incorporated into George's appearance and waiver form filed with the court. George's representations would amount to fraud on the court because the court and Geraldine had no reason to question the validity of George's appearance and waiver form, and the court had to find the existence of a lawful marriage relationship between George and Geraldine in order to render a divorce decree. *See Southwest Slopes,* 81 Hawai'i at 505–06, 511, 918 P.2d at 1161–62, 1167 (noting that the mere possibility that fraud was used to obtain a judgment required the judgment to be vacated). Consequently, it would seem indisputable that the substance of Geraldine's claim is not just fraud, but that the integrity of the judicial proceedings was violated because the court relied on George's alleged fraud in issuing its divorce decree.[22]

## XI.

Second, the majority maintains Geraldine's undue influence allegations fall under HFCR Rule 60(b)(3) because (a) "other misconduct

of an adverse party" includes undue influence, (b) the history of the analogous federal rule supports that conclusion, and (c) other states treat undue influence as other misconduct under subsection 3. Majority opinion at 147–49, 254 P.3d at 458–60.

## A.

In the majority's view, HFCR Rule 60(b)(6), which allows relief for "any other reason," can only be invoked when someone other than the adverse party acted improperly, irrespective of the "type" of misconduct or action committed by the opposing party. As discussed *supra,* following established rules of construction, "other misconduct" only embraces types of conduct similar to fraud and misrepresentation. Because undue influence is not similar to fraud and misrepresentation, it does not fall under subsection 3. *See* discussion *supra.*

The majority cites *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 923 (1st Cir.1988), for the proposition that "other misconduct" in subsection 3 must be given an expansive definition. Majority opinion at 147–48, 254 P.3d at 458–59. In fact, *Anderson* did not define "other misconduct," but only focused on whether "other misconduct" should include unintentional acts, as opposed to only intentional acts such as fraud and misrepresentation. 862 F.2d at 923–24.[23] In the instant

---

osition that fraud on the court is properly considered as a type of fraud because it was discovered on direct appeal. To the contrary, the fact that the fraud on the court was addressed for the first time on appeal suggests that fraud on the court is more than mere fraud and can be raised by the court or the parties without waiver. *Reintjes* involved an allegation that the defendant committed perjury during an arbitration proceeding that led to settlement negotiations and the payment of a monetary sum to the defendant. 71 F.3d at 45. The plaintiff brought a complaint alleging unfair and deceptive acts and fraud. The First Circuit Court of Appeals concluded that fraud cognizable to bring an independent action must be more than common law fraud under the law of that circuit. *Id.* Inasmuch as *Reintjes* involved the requirements for bringing an independent action in the First Circuit, it did not bear on Rule 60(b)(6).

**22.** Concluding that the "substance," majority opinion at 145–46, 254 P.3d at 456–57, of Geraldine's claim is fraud that falls under HFCR Rule

60(b)(3), the majority purports "not [to] resolve whether fraud on the court properly falls under Rule 60(b)(3) or Rule 60(b)(6)[,]" *id.* at 146 n. 20, 254 P.3d at 457 n. 20, and believes any discussion about the proper subsection would be dicta, *id.* However, if the majority believed a claim of fraud on the court fell under HFCR Rule 60(b)(3), then it would have dispensed with that claim by stating that the claim was barred by the one-year limitation of HFCR Rule 60(b)(3), without having to reach the "substance" of Geraldine's claim. By avoiding the question of whether subsection (3) or (6) applies, the majority calls into question the status of a fraud on the court claim.

**23.** According to that court,

"Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. For the term to have meaning in the Rule 60(b)(3) context, it must differ from both "fraud" and "misrepresentation." Definition

case, the issue is not whether undue influence is an intentional or unintentional act, but whether it is similar to fraud or misrepresentation. For the reasons set forth *supra*, it is not. Nevertheless, the majority maintains that "[i]f relief under Rule 60(b)(3) were limited to conduct involving false representations, as the dissent asserts, the phrase 'other misconduct' would be rendered surplusage." Majority opinion at 147 n. 22, 254 P.3d at 458 n. 22.

To the contrary, by abandoning established statutory construction rules, the majority leaves the term "other misconduct" without any manageable limits. This approach would swallow up the "any other reason to justify relief" language in 60(b)(6).[24] Moreover, other causes of action aside from fraud and misrepresentation contain a false representation element and, therefore, would fall under "other misconduct." *See, e.g., Gold v. Harrison,* 88 Hawai'i 94, 100, 962 P.2d 353, 359 (1998) (holding that defamation requires a false statement); *Rodriguez v. Nishiki,* 65 Haw. 430, 437, 653 P.2d 1145, 1150 (1982) (suggesting that both libel and slander include a false statement); *Russell v. Am. Guild of Variety Artists,* 53 Haw. 456, 459 n. 2, 497 P.2d 40, 43 n. 2 (1972) (explaining that libel involves one who falsely publishes defamatory matter); *Hawaiian Ins. & Guar. Co. v. Blair, Ltd.,* 6 Haw.App. 447, 454 n. 10, 726 P.2d 1310, 1315 n. 10 (1986) (noting that disparagement involves publication of an injurious falsehood). It is obvious there is no

"surplusage." Thus, despite the majority's statement to the contrary, *see* majority opinion at 147 n. 22, 254 P.3d at 458 n. 22, these causes of action can be "other misconduct" under HFCR Rule 60(b)(3).

## B.

Contrary to the majority's position, the history of the federal rule does not govern the placement of "undue influence" at all. Prior to the 1937 adoption of FRCP Rule 60, the substantive and procedural law dealing with relief from judgment was complex. *See United States v. Mayer,* 235 U.S. 55, 67–69, 35 S.Ct. 16, 59 L.Ed. 129 (1914) (noting the general principle is that a court could not set aside or alter its final judgment after expiration of the term during which it was entered, subject to a few certain exceptions). The purpose of the federal rules was to clarify the practice.[25] The change in 1946 thus was intended to eliminate the procedural complexities of the former practice, while preserving two avenues for obtaining relief from judgment, a motion or an independent action. FRCP 60(b) 1946 advisory committee note.

The majority contends that because a claim of relief for undue influence was cognizable previously as a suit in equity, it is cognizable under Rule 60(b)(3), not Rule 60(b)(6), inasmuch as Rule 60(b)(6) extended remedies beyond the previous procedures for relief.[26] Majority opinion at 148–49, 254 P.3d

of this difference requires us to take an expansive view of "misconduct." *The term can cover even accidental omissions—elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it.* 862 F.2d at 923 (emphasis added).

**24.** The majority responds that its interpretation of HFCR Rule 60(b)(3) is manageable because the conduct must be performed by an adverse party. Majority opinion at 147 n. 22, 254 P.3d at 458 n. 22. The fact that the conduct must be "of an adverse party[,]" *id.,* simply reflects the plain language of the rule. It is the majority's application of "other misconduct" that is untethered to any governing principle.

**25.** The Advisory Committee explained:
Since the rules had been in force [since 1937], decisions have been rendered that the use of bills of review, coram nobis, or audita querela, to obtain relief from final judgments is still proper, *and that various remedies of this kind*

*still exist although they are not mentioned in the rules and the practice is not prescribed in the rules. It is obvious that the rules should be complete in this respect and define the practice with respect to any existing rights or remedies to obtain relief from final judgments.*
FRCP 60(b) 1946 advisory committee note (emphasis added).

**26.** Of course, this court can and has deviated from FRCP Rule 60(b). "[N]otwithstanding their persuasiveness, interpretations of the FRCP by federal courts are by no means conclusive with respect to our interpretation of any rule within the [HFCR]." *Kawamata Farms,* 86 Hawai'i at 256, 948 P.2d at 1097. Indeed, *Kawamata Farms,* by allowing affirmative relief under HRCP Rule 60(b)(3), "depart[ed] from federal case law and set [] a new precedent"[,] *id.* at 257, 948 P.2d at 1098, because the fraud was egregious and "[a]s a matter of equity, it would be unfair to allow DuPont to escape accountabili-

at 459–60. However, as the majority observes, the 1948 advisory committee note explains that Rule 60(b) itself "superceded" equitable remedies. *Id.* at 148, 254 P.3d at 459. Thus, it does not follow that Rule 60(b)(3) was intended to be the appropriate vehicle for a claim of undue influence simply because undue influence could be brought previously in equity. Indeed, in response to an argument that subsection 60(b)(6) should only provide relief that had been authorized under the common law remedies, the Supreme Court explained that "[o]ne thing wrong with this contention is that *few courts ever have agreed as to what circumstances would justify relief under these old remedies.*" *Klapprott v. United States,* 335 U.S. 601, 614, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (emphasis added).

As the Committee noted, "Rule 60(b) does not assume to define the *substantive law* as to the grounds for vacating judgments, but merely *prescribes the practice* in proceedings to obtain relief." FRCP 60(b) 1948 advisory committee note (emphases added). The question of whether undue influence falls under "other misconduct" is one of substantive law that must be answered by this court; it is plain that the Committee did not intend to categorize unenumerated claims under particular subsections. In other words, there is nothing in the history of the rule to suggest that undue influence falls under subsection 3.

Rather, Rule 60(b)(6) "broadens the grounds for relief from a judgment set out in the five preceding clauses[,]" and was intended to give "the courts ample power to vacate judgments whenever that action is appropriate to accomplish justice." 11 Wright, Miller & Kane, *supra* § 2864, at 355.[27] The case law in fact supports the conclusion that undue influence should fall under subsection 6. The Supreme Court noted that,

ty[.]" *id.* Similarly, "as a matter of equity[,]" undue influence should not be barred by the one-year limitation under subsection 3 because it would be "unfair" to allow George, assuming the alleged exertion of undue influence over Geraldine, to reap the monetary benefits of his actions.

**27.** The majority cites to the Note, *Federal Rule 60(B): Relief From Civil Judgments,* 61 Yale L.J.

[i]t is contended that the "other reason" clause should be interpreted so as *to deny relief except under circumstances sufficient to have authorized relief under the common law writs of coram nobis and audita querela,* and that the facts shown here would not have justified relief under these common law proceedings.... To accept this contention would therefore *introduce needless confusion in the administration of 60(b) and would also circumscribe it within needless and uncertain boundaries.* Furthermore 60(b) strongly indicates on its face that *courts no longer are to be hemmed in by the uncertain boundaries of these and other common law remedial tools.*

*Klapprott,* 335 U.S. at 614, 69 S.Ct. 384 (emphases added). Indeed, "[i]n simple English, the language of the 'other reason' clause [of subsection 6], for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 614–15, 69 S.Ct. 384.

### C.

#### 1.

The majority contends that some federal cases have stated that

"Rule 60(b)(3) is the lineal descendant of the equity rule that a court may alter or annul, because of fraud or undue influence, a written instrument (such as a contract or patent-but also a court's own judgment), *see [Hazel–Atlas* ], 322 U.S. [at] 244–45 [64 S.Ct. 997], only if the fraud or undue influence is proved by clear and convincing evidence."

Majority opinion at 148, 254 P.3d at 459 (quoting *Ty Inc. v. Softbelly's, Inc.,* 517 F.3d 494, 498 (7th Cir.2008) (citation added); *Massi v. Walgreen Co.,* No. 3:05–cv–425, 2008

76, 81 & n.25 (1952), for support that undue influence falls under Rule 60(b)(3) and is constrained by the one year limitation. However, that note does not mention undue influence, or state that that cause of action falls under subsection 3. Indeed, the note urged abolishment of the one year time limitation.

WL 2066453, at *3 (E.D.Tenn. May 13, 2008)). However, those cases erroneously rely on *Hazel–Atlas*, which did not discuss undue influence, but only fraud on the court.

In *Hazel–Atlas*, the defendant, Hartford Empire (Hartford), had obtained a patent supported in part by a trade journal article allegedly written by an expert, Clarke, who favorably commented on Hartford's device. 322 U.S. at 240, 64 S.Ct. 997. Hartford sued Hazel–Atlas Glass Company (Hazel), claiming Hazel's patent infringement, and the D.C. Circuit Court of Appeals, quoting copiously from the trade journal article, concluded that Hazel infringed on the patent and directed the circuit court to enter judgment accordingly. *Id.* at 241, 64 S.Ct. 997. Upon information that Hartford's lawyer was the article's true author, Hazel's representatives interviewed Clarke, who swore that he was the true author of the article. Hartford's representative also met with Clarke and Hartford was "quite indebted to Mr. Clarke" who "might easily have caused [Hartford] a lot of trouble." *Id.* at 242–43, 64 S.Ct. 997. After Hazel settled, Hartford's attorney paid Clarke $7500 in cash. *Id.* at 243, 64 S.Ct. 997.

*Thirteen years* after the settlement, these facts were revealed and Hazel sought a bill of review. *Id.* The Third Circuit Court of Appeals refused to grant relief. The Supreme Court reversed, stating that there was a "deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." *Id.* at 245, 64 S.Ct. 997.

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. *It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.* Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id.* at 246, 64 S.Ct. 997 (emphasis added). Obviously, *Hazel–Atlas* involved only fraud on the court. Thus, it cannot be cited properly for the proposition that undue influence falls under subsection 3. The two cases referred to by the majority that cited *Hazel–Atlas* for that proposition are therefore inaccurate and themselves did not involve claims of under influence.[28] *See, e.g., In re Intermagnetics Am., Inc.,* 926 F.2d 912, 916–17 (9th Cir.1991) (stating that *Hazel–Atlas* involved fraud upon the court).

### 2.

The majority also cites four state cases it maintains "appear to treat allegations of undue influence as 'other misconduct of an adverse party'" under similar provisions. Majority opinion at 148, 254 P.3d at 459. The majority states that these cases are not "inapposite" because these courts actually "determined" that undue influence could be brought under provisions similar to HFCR Rule 60(b)(3). *Id.* at 149 n. 25, 254 P.3d at 460 n. 25. However, these cases are inapposite because the courts did not "determine" that proposition inasmuch as either the claim was brought within six months of the court's order or decision and therefore was timely under subsection 3, thus the court did not need to decide whether it could be brought under that section, *Rothschild v. Devos,* 757 N.E.2d 219, 223 (Ind.App.2001),[29] *Coppley v. Coppley,* 128 N.C.App. 658, 496 S.E.2d 611,

---

**28.** The majority cites *In re Leisure Corp.,* No. C–03–03012 RMW, 2007 WL 607696, at *5 (N.D.Cal. Feb.23, 2007), and *Interactive Edge, Inc. v. Martise,* No. 97 Civ. 3354(RO), 1998 WL 35131, at *3 (S.D.N.Y. Jan.30, 1998). Because both cases involved allegations of duress and threats, and not undue influence, and were timely brought within a year, they are inapplicable. *Leisure Corp.* involved a complaint in connection with a *"FRCP 60(b)(3)* [] Motion to Set Aside Orders[,]"* 2007 WL 607696, at *3 (emphasis added), and indicated relief was "being sought on the grounds of [a party's] alleged fraud, misrepresentation and misconduct[,]" *id.* at *5.

**29.** *Devos,* 757 N.E.2d at 221, 224, involved the plaintiff's timely Rule 60(b) motion to set aside a dissolution of the marriage decree on the grounds of fraud, undue influence, duress and "fraud perpetrated by [the plaintiff's wife] on [the plaintiff] and/or the court." The trial court denied the plaintiff's motion. *Id.* The appellate

613–14 (1998), *Knutson v. Knutson,* 639 N.W.2d 495, 495 (N.D.2002) [30]; or it was unclear under what subsection the motion was brought and the court discussed all relevant subsections, *Self v. Maynor,* 421 So.2d 1279, 1280 (Ala.Civ.App.1982).[31] *See* 11 Wright, Miller & Kane, *supra* § 2864, at 355 (noting that, in cases where the motion is made within a year of judgment, "it is not important to decide whether the motion in fact comes under clause (6) or under one of the earlier clauses[,]" because "[t]hese prompt motions for relief are granted if the court thinks that justice requires it and denied if the court feels otherwise").

### XII.

Finally, the majority contends Geraldine did not request an evidentiary hearing and Geraldine did not raise the lack of an evidentiary hearing in her Application. Majority opinion at 149, 254 P.3d at 460. To reiterate, Geraldine made it explicit that an evidentiary hearing was necessary in order to determine the 60(b)(6) issues. Geraldine's motion indicated that "[s]pace does not permit a detailed, fact-intensive showing[,]" but how the division was inequitable *"will be shown in detail at the evidentiary hearing."* (Emphasis added.) The motion for post-decree relief to vacate the divorce decree was based in part on *"evidence as may be submitted in supplementation* of this Motion *or at the hearing on this Motion* [.]" (Emphases add-

ed.) In her reply, Geraldine requested that the court address the HFCR Rule 60(b)(4) issue first, and, if the divorce decree was not void, to hold an evidentiary hearing on the HFCR Rule 60(b)(6) issues. Indeed, George's counsel appears to have taken a similar position, stating that the October 8, 2007 hearing was a "threshold hearing" involving a preliminary inquiry with, possibly, an evidentiary hearing to be held in the future. Thus, it is abundantly clear that Geraldine sought an evidentiary hearing on 60(b)(6). There was no opportunity to present evidence at a hearing because it was foreclosed by the court's ruling.

Respectfully, there is no merit to the contention that Geraldine failed to raise the issue of the evidentiary hearing in her Application. Again, the ICA concluded that the "court did not abuse its discretion by failing to *provide Geraldine relief or a hearing regarding them." Dubie,* 123 Hawai'i at 282, 231 P.3d at 999 (emphasis added). In her Application, Geraldine argued that the ICA committed "grave error when it held that undue influence and fraud on the court f[e]ll under HFCR Rule 60(b)(3), rather than HFCR Rule 60(b)(6)," and that the "alternative relief sought" was time barred. Geraldine sought "remand for consideration on the merits." Inasmuch as remand for "consideration on the merits" would of necessity include the evidentiary hearing requested from the family court with respect to HFCR Rule 60(b)(6), Geraldine obviously preserved her

court decided the trial court failed to address all of the plaintiff's claims in the motion and remanded for another hearing. *Id.* at 223. In a footnote that court stated that undue influence and duress could "presumably" be grounds for relief under subsection 3 as other misconduct of an adverse party. *Id.* at 224 n. 9. However, since the motion was timely brought under subsection 3, and the trial court failed to reach the issue of undue influence at all, that language was dicta and *Devos* has no bearing on whether undue influence can be brought under subsection 6.

30. *Coppley,* 496 S.E.2d at 616–18, and *Knutson,* 639 N.W.2d at 495, are irrelevant because they involved allegations of undue influence brought within one year of the decrees that were challenged. Therefore, those courts were not faced with the question of whether the motions should have been brought pursuant to subsection 6.

31. *Maynor,* 421 So.2d at 1280, involved a motion seeking relief pursuant to Rule 60(b) on the grounds of fraud and/or undue influence. Because the motion was not brought pursuant to a particular subsection of 60(b), the appellate court considered the allegations under subsections 1, 2, 3, and 6. Although noting that "the relief sought falls clearly within the purview of either 60(b)(1) or (2) or (3)[,]" and "rule 60(b)(6) would not be available[,]" the appellate court proceeded to discuss whether the facts merited relief under Rule 60(b)(6), and concluded that there was "evidence to support the trial court's conclusion of no such undue influence or fraud that required the judgment to be set aside." *Id.* at 1281. Inasmuch as there was no evidence of undue influence, there was no reason to grant relief under subsection 6. *Id.* In contrast, in the instant case, there is evidence of undue influence proffered by declarations.

claim for an evidentiary hearing. *See* Application at 2 (lamenting the fact that at a "non-evidentiary hearing" the court granted substitution, and "without conducting an evidentiary hearing," the court denied Geraldine's motion for post-decree relief).

## XIII.

Based on the foregoing reasons, I would vacate the May 3, 2010 judgment of the ICA and remand to the court for further proceedings.